

FILED
2020 Jun-22  AM 11:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,           )
ex rel., JENNIFER COOK and          )
SALLY GAITHER,                      )
                                    )
    Relators /Plaintiffs,          )
                                    )
vs.                                 )        CIVIL ACTION NO.:
                                    )
                                    )        FILED IN CAMERA AND
INTEGRATED BEHAVIORAL HEALTH,       )        UNDER SEAL
INC., DR. SANJAY MALHOTRA,          )
AMERICAN HEALTH PARTNERS, UNITY     )
PSYCHIATRIC CARE, ATHENS-LIMESTONE)
HEALTH SERVICES, L.L.C, VALLEY VIEW )
HEALTH AND REHABILITATION, L.L.C    )
FRANKLIN LTC, L.L.C D/B/A TERRANCE  )
MANOR NURSING HOME` &               )
REHABILTATION CENTER, AFFINITY      )        (TRIAL BY JURY)
LIVING GROUP L.L.C., DIVERSICARE OF )
 BIG SPRINGS, L.L.C., ATHENS HEALTH )
AND REHABILITATION, L.L.C., MADISON )
MANOR NURSING HOME, L.L.C.,         )
BROOKDALE SENIOR LIVING             )
COMMUNITY, L.L.C., REGENCY SENIOR   )
LIVING L.L.C. D/B/A REGENCY HEALTH  )
CARE & REHAB CENTER, NHC            )
HEALTHCARE/ MOULTON L.L.C.,         )
INC., SOUTH HAMPTON NURSING &       )
REHABILITATION CENTER, L.L.C.,      )
HANCEVILLE PRIMARY HEALTHCARE       )
L.L.C., HUNTSVILLE HEALTH AND       )
 REHABILITATION, L.L.C., SUMMERFORD )
NURSING HOME, INC., DIVERSICARE     )
 WINDSOR HOUSE, L.L.C., MERRILL     )
GARDENS, L.L.C., CLOVERDALE         )
HEALTHCARE, INC. D/B/A CLOVERDALE   )
REHABILITATION & NURSING CENTER     )
HARBORCHASE OF BIRMINGHAM, INC.     )
SUNBRIDGE HEALTHCARE, L.L.C. D/B/A  )
RIVER CENTER CITY, SIGNATURE        )
HEALTHCARE CLINICAL CONSULTING      )

**SERVICES, L.L.C. D/B/A SIGNATURE** )
**HEALTHCARE OF WHITESBURG GARDEN** )
                                                  )
              **Defendants.** )

## QUI TAM COMPLAINT

COME NOW Sally Gaither and Jennifer Cook, by and through undersigned counsel, before this Honorable Court on behalf of the United States of America, its departments and agencies and file this *Qui Tam* Complaint under the False Claims Act, 31 U.S.C. § 3729 et seq. to recover damages, civil penalties, and other equitable relief against Defendants American Health Partners, Unity Psychiatric Care ("Unity"), Integrated Behavioral Health ("IBH"), Dr. Sanjay Malhotra ("Malhotra"), Athens-Limestone Health Services, L.L.C., Valley View Health and Rehabilitation, L.L.C., Franklin LTC, L.L.C. d/b/a Terrance Manor Nursing Home & Rehabilitation Center, Affinity Living Group, L.L.C. (Westminster in Decatur), Diversicare of Big Springs, L.L.C., Athens Health and Rehabilitation, L.L.C., Madison Manor Nursing Home, L.L.C., Brookdale Senior Living Community, L.L.C., Regency Senior Living, L.L.C. d/b/a Regency Health Care & Rehab Center, NHC Healthcare/Moulton, L.L.C., South Hampton Nursing & Rehabilitation Center, L.L.C., Hanceville Primary Healthcare, L.L.C., Sunbridge Healthcare, L.L.C. d/b/a/ River City Center, Heritage Assisted Living & Memory Care, L.L.C., Diversicare Leasing Corporation, Signature Healthcare Clinical Consulting Services, L.L.C. d/b/a Signature Healthcare of Whitesburg Garden, Hanceville Nursing and Rehabilitation, Inc., Huntsville Health and Rehabilitation, L.L.C., Summerford Nursing Home, Inc., Diversicare Windsor House, L.L.C., Merrill Gardens, L.L.C., Cloverdale Healthcare, Inc. d/b/a Cloverdale Rehabilitation & Nursing Center, and HarborChase of Birmingham, Inc. In support of these claims, Relators respectfully show this Court the following:

## JURISDICTION AND VENUE

1.      This is an action to recover damages and civil penalties on behalf of the Government arising out of false claims and records presented by Defendants to the Government. This action arises under the False Claims Act ("FCA"), 31 U.S.C §3729 et. seq., which provides that the United State District Courts shall have exclusive jurisdiction.

2.      This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331, 3732 (a), and 1345.

3.      Relator has standing to bring this qui tam action under the FCA, even if Relators has suffered no injury. Relators have stepped in as the Government representative or assignee to effectuate the statute's purpose of uncovering fraud against the Government.

4.      Venue lies in this judicial district pursuant to 31 U.S.C. § 3732 (a), because Defendants qualify to do business in the State of Alabama, transact substantial business in this judicial district, and can be found here. Additionally, and as described herein, Defendants committed acts within this judicial district proscribed by 31 U.S.C. § 3728. Specifically, and inter alia, Defendants submitted and caused to be submitted within this judicial district false claims that are the results of kickbacks and referrals in violations of the Anti-Kickback Act, 42 U.S.C. § 1320a-7b (b) and physician self-referral laws (Stark), 42 U.S.C. § 1395.

## CONDITION PRECEDENT

5.      As required under the False Claims Act ("FCA"), 31 U.S.C. §3730 (a)(2), Relators provided to the United States Attorney for the Northern District of Alabama, a statement of all material disclosures related to the Complaint.

## PARTIES

6.      Relators Sally Gaither and Jennifer Cook acting on behalf of the United States, bring this civil action under the Qui Tam provisions of the False Claims Act, as amended.

7.     Relator Sally Gaither is a citizen of the United States and a resident of the State of Alabama.

8.     Relator Jennifer Cook is a citizen of the United States and a resident of the State of Alabama.

9.     Defendant Dr. Sanjay Malhotra (hereinafter "Dr. Malhotra") is a Psychiatrist licensed to practice medicine in the State of Alabama. Dr. Malhotra is the founder and chairman of IBH.  Upon information and belief, Dr. Malhotra is a resident of the State of Alabama.

10.     Defendant Integrated Behavioral Health (hereinafter "IBH") is an integrated mental health facility located in Northern Alabama and Southern Tennessee. IBH provides outpatient and inpatient services, as well as onsite psychiatric services in long term care facilities. IBH has multiple locations throughout Northern Alabama.  IBH is a corporation organized pursuant to the laws of the State of Alabama with its principal place of business in Madison, Alabama.

11.     Defendant Athens-Limestone Health Services, L.L.C. is a domestic limited liability company organized pursuant to the laws of the state of Alabama. Defendant Athens-Limestone Health Services, L.L.C.'s principal place of business is located in Athens, Alabama.

12.     Defendant Valley View Health and Rehabilitation, L.L.C. is a domestic limited liability company organized pursuant to the laws of the state of Alabama. Defendant Valley View Health and Rehabilitation, L.L.C. 's principal place of business is located in Birmingham, Alabama.

13.     Defendant Franklin LTC, L.L.C. d/b/a Terrance Manor Nursing & Rehabilitation Center (hereinafter "Defendant Terrance Manor Nursing & Rehabiliation") is a domestic limited liability company organized pursuant to the state of Alabama with its principal place of business

located in Russellville, Alabama. Defendant Terrance Manor Nursing & Rehabilitation conducts substantial and continuous business within the state of Alabama and this judicial district.

14.     Defendant Affinity Living Group, L.L.C. is a foreign limited liability company organized pursuant to the laws of the state of North Carolina with its principal place of business in Hickory, North Carolina. Defendant Affinity Living Group, L.L.C. is engaged in substantial and continuous business in the state of Alabama.

15.     Defendant Diversicare of Big Springs, L.L.C. is a foreign limited liability company organized pursuant to the laws of the state of Tennessee. Defendant Diversicare of Big Springs, L.L.C. conduct substantial and continuous business in the state of Alabama through its skilled residential nursing homes.

16.     Defendant Athens and Rehabilitation, L.L.C. is a domestic limited liability company organized pursuant to the laws of the state of Alabama. Defendant Athens and Rehabilitation, L.L.C.'s principal place of business is located in Jefferson County, Alabama and Defendant conducts substantial and continuous business in this judicial district.

17.     Defendant Madison Manor Nursing Homes, L.L.C. is a domestic limited liability company organized pursuant to the laws of the state of Alabama. Defendant Madison Manor Nursing Homes, L.L.C.'s principal place of business is located in Madison, Alabama.

18.     Defendant Brookdale Senior Living Communities, L.L.C. is a foreign corporation organized pursuant to the laws of the state of Delaware. Defendant Brookdale Senior Living Communities, L.L. C's principal place of business is located in Brentwood, Tennessee. Defendant Brookdale Senior Living Communities, L.L.C. conduct substantial and continuous business in the state of Alabama through its skilled nursing homes facilities.

19.     Defendant Regency Senior Living, L.L.C. d/b/a Regency Health Care & Rehab Center (hereinafter, "Defendant Regency Health Care & Rehab Center") is a foreign limited liability company organized pursuant to the state of Delaware. Defendant Regency Senior Living, L.L. C's principal place of business is located in Ooltewah, Tennessee. Defendant Regency Health Care & Rehab Center conducts substantial and continuous business within the state of Alabama and within this judicial district.

20.     Defendant NHC Healthcare/Moulton, L.L.C. is a domestic limited liability company organized pursuant to the laws of the state of Alabama. Defendant NHC Healthcare/Moulton, L.L.C.'s principal place of business is located in Moulton, Alabama. Defendant NHC Healthcare/Moulton, L.L.C. conducts substantial and continuous business throughout the state of Alabama and throughout this judicial district.

21.     Defendant South Hampton Nursing & Rehabilitation Center, L.L.C. is a domestic limited liability center organized pursuant to the state of Alabama. Defendant South Hampton Nursing & Rehabiliation Center, L.L.C. principal place of business is located in Centre, AL. Defendant South Hampton Nursing & Rehabilitation Center, L.L.C. conducts substantial and continuous business throughout the state of Alabama and throughout this judicial district.

22.     Defendant Hanceville Primary Healthcare, L.L.C. is a domestic limited liability company organized pursuant to the laws of the state of Alabama.  Defendant Hanceville Primary Healthcare, L.L.C.'s principal place of business is located in Hanceville, Alabama. Defendant Hanceville Primary Healthcare, LLC conducts substantial and continuous business through its skilled nursing facilities throughout the state of Alabama and throughout the judicial district.

23.     Defendant Assisted Living & Memory Care, L.L.C. is a domestic limited liability company organized pursuant to the laws of the state of Alabama. Defendant Assisted Living & Memory Care, L.L.C. conducts substantial and continuous business throughout the state of Alabama through its skilled nursing facility and throughout this judicial district.

24.     Defendant Diversicare Leasing Corporation is a foreign corporation organized pursuant to the laws of the state of Tennessee. Defendant Diversicare Leasing Corporation's principal place of business is located in Brentwood, Tennessee. Diversicare Leasing Corporation conducts substantial and continuous business in the state of Alabama and this judicial district.

25.     Defendant Signature Healthcare Clinical Consulting Services, L.L.C. d/b/a Signature Healthcare of Whitesburg Garden (hereinafter, "Defendant Signature Healthcare of Whitesburg Garden" is a foreign limited liability company organized pursuant to the laws of the state of Delaware. Defendant Signature Healthcare of Whitesburg Garden's principal place of business is located in Louisville, Kentucky.  Defendant Signature Healthcare of Whitesburg Garden conducts substantial and continuous business within the state of Alabama and throughout this judicial district through its skilled nurse home facilities.

26.     Defendant Hanceville Nursing & Rehab Center, Inc. is a domestic corporation organized pursuant to the laws of the state of Alabama. Defendant Hanceville Nursing & Rehab Center, Inc.'s principal place of business is located in Hanceville, Alabama.  Hanceville Nursing & Rehab Center, Inc. conducts substantial and continuous business in the state of Alabama and this judicial district.

27.     Defendant Huntsville Health and Rehabilitation, L.L.C. is a domestic limited liability company organized pursuant to the laws of the state of Alabama. Defendant Huntsville

Health and Rehabilitation, L.L.C.'s principal place of business is located in Huntsville, Alabama. Huntsville Health and Rehabilitation, L.L.C.conducts substantial and continuous business within the state of Alabama and this judicial district.

28.     Defendant Summerford Nursing Home, Inc. is a domestic corporation organized pursuant to the laws of the state of Alabama. Defendant Summerford Nursing Home, Inc.'s principal place of business is located in Falkville, Alabama. Defendant Summerford Nursing Home, Inc. conducts substantial and continuous business throughout the state of Alabama and within this judicial district.

29.     Defendant Diversicare Windsor House, L.L.C. is a foreign limited liability company organized pursuant to the laws of the state of Alabama. Defendant Diversicare Windsor House, L.L.C.'s principal place of business is located in Huntsville, Alabama. Defendant Diversicare Windsor House, L.L.C.  conducts substantial and continuous business within the state of Alabama and within this judicial district.

30.     Defendant Merrill Gardens, L.L.C. is a foreign limited liability company organized pursuant to the laws of Washington. Defendant Merrill Gardens, L.L.C.'s principal place of business is located in Seattle, Washington. Merrill Gardens, L.L.C. conducts substantial and continuous business within the state of Alabama and within this judicial district.

31.     Defendant Cloverdale Health Care, Inc. d/b/a Cloverdale Rehabilitation and Nursing Center (hereinafter, "Defendant Cloverdale Rehabilitation and Nursing Center") is a domestic corporation organized pursuant to the state of Alabama. Defendant Cloverdale Rehabiliation and Nursing's principal place of business is located in Scottsdale, Alabama.

Cloverdale Rehabiliation and Nursing conducts substantial and continuous business within the state of Alabama and this judicial district through its skilled nursing facilities.

32.     Defendant Harborchase of Birmingham, Inc. is a foreign corporation organized pursuant to the laws of the state of Florida. Defendant Harborchase of Birmingham, Inc.'s principal place of business is located in Birmingham, Alabama.  Harborchase of Birmingham, Inc. conducts substantial and continuous business within the state of Alabama and within this judicial district.

33.     Defendant Sunbridge Healthcare, L.L.C. d/b/a River City Center (hereinafter, "River City Center') is a foreign limited liability company organized pursuant to the laws of the state of New Mexico. Defendant River City Center's principal place of business is located in Albuquerque, New Mexico. Defendant River City Center conducts substantial and continuous business throughout the state of Alabama and judicial district through its skilled nursing facility.

## APPLICABLE LAW

34.     The FCA provides, in pertinent part, that: (a) any person who (1) knowingly presents, or causes to be presented, to an officer or an employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or cause to be made or used, a false record or statement to get a false fraudulent claim paid or approved by the Government; (2) conspires to defraud the Government by getting a false or fraudulent claim paid or approved by the Government; or (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the Government is liable to the United States Government for a civil penalty of not less than $11,463.00 and not more than

$22,927.00 plus treble damages which the Government sustains because of the false or fraudulent acts.

35.     The Anti-Kickback Act, 42 U.S.C. §1320a-7b(b), arose out of congressional concern that payoffs to those who influence healthcare decisions will result in goods and services being provided that are medically unnecessary, of poor quality, or harmful to a vulnerable patient population. To protect the integrity of the healthcare system, Congress enacted a per se prohibition against the payment of kickbacks in any form. The act prohibits anyone from making or accepting payment or any form of remuneration for referring, recommending, or arranging for federally funded medical services, including services provided under the Medicare and Medicaid programs. It prohibits anyone from knowingly or willfully soliciting or receiving any remuneration directly or indirectly, overtly or covertly, in exchange for referring an individual to a person for the furnishing (or arranging for the furnishing) of any item or service for which payment may be made in whole or in part under the federal health care program. *See* 42 U.S.C. § 1320a-7b(b). Violators of the Anti-Kickback may be prosecuted criminally or may be subject to civil monetary penalties and excluded from Medicare/Medicaid programs. *Id. See also*, 42 U.S.C.  § 1320a-7a(a)(7). Additionally, violation of the act can subject the perpetrator to civil monetary fines of $50,000.00 per violation and three times the amount of remuneration paid. See 42 U.S.C. §§ 1320a-7(b)(7), 1320a-a(a)(7).

36.     Section 1877 of the Social Security Act, also known as the physician self-referral law and commonly referred to as the "Stark Law" prohibits the following:  a physician from making referrals for certain designated health services ("DHS") payable by Medicare to an entity with which he or she (or an immediate family member) has a financial relationship (ownership,

investment, or compensation). Both inpatient and outpatient hospital services qualify as "DHS". *See* 42 U.S.C. §1395nn.

37.    The Stark Statute establishes the clear rule that the government will not pay for items or services prescribed by physicians who have improper financial relationships with other providers. In enacting the statute, Congress found that improper financial relationships between physicians and entities to whom they refer patients can compromise the physicians' professional judgment as to whether an item or services is medically necessary, safe, effective and of good quality. Congress relied upon various academic studies consistently showing that physicians who had financial relationships with hospitals and other entities used more of those entities' services than similarly situated physicians who did not have such relationships. The statute was designed specifically to reduce the loss suffered by the Medicare program due to such increase questionable utilization of services.

38.    The Stark Statute provides: (a) prohibition of certain referrals (1) In general, except as provided in subsection (b) of this section, if a physician (or an immediate family member of such physician) has a financial relationship with an entity specified in paragraph (2), then—(A) the physician may not make a referral to the entity for the furnishing of designated health services for which payment otherwise may be made under this subchapter, and (B) the entity may not present or cause to be presented a claim under this subchapter or bill to any induvial, third party payor, or other entity for designated health services furnished pursuant to a referral prohibited under subparagraph (A).

39.    The Stark Statute broadly defines prohibited financial relationships to include any "compensation" paid directly or indirectly to the referring physician. The statute's exception then identifies specific transactions that will not trigger its referral and billing prohibition.

**Medicare Regulations**

40.     Title XVIII of the Social Security Act, 42 establishes the Health Insurance for the Aged and Disabled Program, commonly referred to as the Medicare Program (the "Medicare Program" or "Medicare").

41.     The Medicare Program is broken out into four parts: Part A, B, C, and D. Medicare Part A pays for inpatient services in an inpatient psychiatric facility only if a physician certifies and recertifies the need for services consistent with the requirements given in Pub. 100-01; Medicare General Information, Eligibility and Entitlement Manual Chapter 4, § 10.9, for certification requirements.

42.     The certification period begins with the ordered for inpatient admission. The certification that a physician must provide, with respect to inpatient psychiatric facility (IPF) services, is document that the services furnished can reasonably be expected to improve the patient's condition or for diagnostic study. The certification is required at the time of admission or as soon thereafter that is reasonable and practicable.

43.     Defendants Unity, IBH, and Dr. Malhotra expressly and/or implicitly certified annually that Defendants complied with federal healthcare laws, regulations, and rules, including, but not limited to, the Anti-Kickback Statute and the Stark law.

.

## FACTUAL ALLEGATIONS AND BACKGROUND

44.     This is an action to recover damages and civil penalties on behalf of the United States of America arising out of false claims and records presented to the United States. This action arises under 31 U.S.C. § 3729, known as the False Claims Act ("FCA").

45.     The FCA claims in this case are based on the Defendants' submission of false claims to the United States of America through the Medicare/Medicaid federal healthcare program. The submitted false claims are a result of illegal kickbacks between Defendants Dr. Malhotra/ IBH and the skilled nursing homes Defendants. Dr. Malhotra used his employee/nurses staffed in the skilled nursing homes to make referrals to mental health facilities with whom he had a financial relationship in violation of the physician self-referral provision of the Stark Act.   Additionally, Defendant Malhotra engaged in medically unnecessary practices to fraudulently bill the Medicare/Medicaid federal healthcare program.

46.     Defendant Sanjay Malhotra, M.D. is a licensed Psychiatrist that specializes in Adult and Geriatric Psychiatry. Specifically, Defendant Malhotra treats patients experiencing acute psychological episodes. Defendant Malhotra has practiced in this area of the medical profession since he completed his residency in 1991.

47.     On or about March 20, 2013, Defendant Malhotra founded Defendant Integrated Behavioral Health (IBH) in Madison, Alabama. IBH provides psychological treatment to mentally and emotional troubled individuals including aging adults.[1]

48.     In addition to practicing Psychiatry at IBH, Dr. Malhotra has medical privileges and is a medical practitioner at the following facilities in Northern Alabama and Southern Tennessee: Decatur Morgan Hospital, Dekalb Regional Medical Center, Shoals Hospital, Southern Tennessee Regional Health System LifeSprings Center (Pulaski, Tennessee), Unity Psychiatric Care, and Cullman Regional Medical Center.

49.     Relator Gaither began working with Defendant Unity on October 17, 2012 as a licensed practical nurse and remained employed until on or about April 19, 2019 when she

---

[1] https://www.ibhus.com/about-integrated-behavioral-health/

resigned. Specifically, Relator Gaither worked at Unity Psychiatric Care, Inc., where Defendant Malhotra is the Medical Director.

50.     Relator Cook began working with Defendant American Health Partners, Inc. on June 4, 2014 as a registered nurse and remained employed until on or about April 19, 2019 when she resigned. Relator Cook also worked at Unity Psychiatric Care, Inc. in Huntsville, Alabama.

51.     Prior to filing this Complaint, Relators Gaither and Cook voluntarily disclosed to the United States the information upon which this action is based. Relators are unaware of any prior disclosure of any information materially pertaining to the fraud alleged in this Complaint. To the extent that any public disclosure has taken place as defined by 31 U.S.C. §3729(e)(4)(A), Relators are the original source of the information for purposes of that Section. Relators have knowledge that is independent of and materially adds to any purported publicly disclosed allegations or transactions and has voluntarily provided information to the United States before filing this Complaint as contemplated by 31 U.S.C. §3729(e)(4)(B)(2).

52.     **Defendants' False Claims Act Violations**. The Relators' qui tam claims are based on the following allegations:

    a.  Defendant Malhotra employs nearly thirty (30) licensed nurse practitioners and nurses, staffs the licensed nurse practitioners in skilled nursing homes and pays the salaries of the licensed nurse practitioners. In exchange for free nursing services, the skilled nursing homes allow Dr. Malhotra to refer patients to hospitals where Defendant Malhotra has financial relationships including Unity Psychiatric Care, Inc., where the Relators are employed;

    b.  Defendants' payment and receipt of kickbacks resulted in and continue to result in fraudulent billing to federal health care programs;

c.  Defendant Malhotra engaged in medically unnecessary practices which resulted in excessive and fraudulent billing to federal healthcare programs.

**A.  Defendant Malhotra Paid Kickbacks to Induce Patient Referrals**

53.    Defendant IBH provides psychological treatment to individuals including aging adults. Additionally, IBH employs nearly thirty nurses and nurse practitioners. IBH staffs its nurses and nurse practitioners with the following skilled nursing homes in Northern Alabama:

a.  Athens-Limestone Health Services, L.L.C.

b.  Valley View Health and Rehabilitation, L.L.C.

c.  Franklin LTC, L.L.C. d/b/a Terrance Manor Nursing Home & Rehabilitation Center

d.  Affinity Living Group, L.L.C. (Westminster in Decatur)

e.  Diversicare of Big Springs, L.L.C.

f.  Athens Health and Rehabilitation, L.L.C.

g.  Madison Manor Nursing Home, L.L.C.

h.  Brookdale Senior Living Community, Inc.

i.  Regency Senior Living, L.L.C. d/b/a Regency Health Care & Rehab Center

j.  NHC Moulton, Inc.

k.  South Hampton Nursing & Rehabilitation Center, Inc.

l.  Hanceville Health and Rehabilitation, Inc.

m.  Sunbridge Healthcare, L.L.C. d/b/a River City Center

n.  Heritage Assisted Living & Memory Care, L.L.C.

o.  Diversicare Leasing Corporation

p.  Defendant Signature Healthcare Clinical Consulting Services, L.L.C. d/b/a Signature Healthcare of Whitesburg Garden

q.  Hanceville Nursing and Rehabilitation, Inc.

r.  Huntsville Health and Rehabilitation, L.L.C.

s.  Summerford Nursing Home, Inc.

t.  Diversicare Windsor house, LLC

u.  Merrill Gardens, L.L.C.

v.  Cloverdale Healthcare, Inc. d/b/a/ Cloverdale Rehabilitation & Nursing Center

w.  HarborChase of Birmingham, Inc.

54.    In addition to staffing its nurses at the Defendants' skilled nursing homes, Defendants Malhotra BH pays the nurses' salaries. Essentially, the nurses perform medical services at the Defendants nursing homes and the nursing homes does not pay for the services.  In exchange for receiving free nursing services in their facilities,  nursing homes allows Dr. Malhotra to refer its patients to medical facilities in which Defendant Malhotra has a financial relationship including the following: Dekalb Regional Medical Center[2], Shoals Hospital Senior Care Center (Florence, Alabama)[3], Unity Psychiatric Care Hospital (Huntsville, Alabama), Cullman Regional Medical Center (Cullman, Alabama), and Decatur Morgan Hospital (Decatur, Alabama).

55.    Specifically, From July 2014 to the present, the Defendant nursing homes allowed Dr. Malhotra and IBH through their nurses to refer patients to the medical facilities in which Defendant Malhotra and IBH have a financial relationship. The referrals were induced by kickbacks between Defendants Malhotra and IBH and skilled nursing facilities.

---

[2] http://www.dekalbregional.com/dekalb-regional-medical-center/findadoctor/malhotra-sanjay-md-2638
[3] https://www.shoalshospital.com/find-a-physician/?physician=smalhotra

56.     On or about January 1, 2017, in Huntsville, Alabama, patient C.C. was referred and admitted to Defendant Unity Psychiatric Hospital for acute psychological treatment. Patient C.C. was a resident of Defendant Athens Health and Rehabilitation, L.L.C.  Patient C.C. was referred to Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Unity.  The referral was induced by unlawful kickbacks between Defendants Dr. Malhotra, IBH and Defendant Athens-Limestone Health Services, L.L.C. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Athens-Limestone Health Services, L.L.C. for free nursing related labor.   On or about January 16, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or January 1, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

57.     On or about January 1, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient C.C. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave the patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs.

58.     On or about January 1, 2017, patient W.G. was referred and admitted to Defendant Unity Psychiatric Hospital for acute psychological treatment. Patient W.G. was a resident of Defendant Athens-Limestone Health Services, L.LC.  Patient W.G. was referred to Unity by Defendant Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Unity. The referral was induced by unlawful kickbacks between Defendants Dr. Malhotra, IBH and Defendant Athens-Limestone Health Services, L.L.C. in violation of the Anti-Kickback

statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Athens-Limestone Health Services, L.L.C for free nursing related services.   On or about January 16, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or January 1, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

59.     On or about January 1, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave the patient opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs.

60.     On or about January 1, 2017, patient B.H. was referred and admitted to Defendant Unity Psychiatry Hospital for acute psychological treatment. Patient B.H. was a resident of Defendant Valley View Health and Rehabilitation, L.L. C's skilled nursing facility.  Patient B.H. was referred to Unity by Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Valley View in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Valley View Health and Rehabilitation, L.L.C for free nursing related services.  On or about January 16, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or January 1, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

61.    Patient B.H. was also referred and admitted to Defendant Unity Psychiatry Hospital for acute psychological treatment on or about April 3, 2017. Patient B.H. was referred again by Dr. Malhotra/IBH. The referral was again induced by unlawful kickbacks between Defendants Malhotra/IBH in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Valley View Health.  On or about April 17, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or April 3, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

62.    On or about April 3, 2017, in Huntsville, Alabama Defendant Malhotra, IBH, and Unity gave patient B.H. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs.

63.    On or about January 1, 2017, patient V.F. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient V.F. was a resident of Defendant Terrance Manor Nursing Home & Rehabilitation Center. Patient V.F. was referred to Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Terrance Manor Nursing Home & Rehabilitation Center in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Terrance Manor Nursing Home & Rehabilitation Center for free nursing related services.  On or about January 16, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-

referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or January 1, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

64.     On or about January 1, 2017, Defendants Malhotra, IBH, and Unity gave patient V.F. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs.

65.     On or about January 1, 2017, patient M.C. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient M.C. was a resident of Defendant Affinity Living Group, Inc. (Westminster in Decatur) skilled nursing facility. Patient M.C. referred to Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra/ IBH and Defendant Affinity Living Group, Inc. (Westminster in Decatur) in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Affinity Living  Group, Inc (Westminster In Decatur).  On or about January 16, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or January 1, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

66.     On or about January 1, 2017, in Huntsville, Alabama, Defendants Malhotra, IBH, and Unity gave patient M.C. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued

and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about January 16, 2017.

67.     On or about February 1, 2017, patient Plotka was referred and admitted to Defendant Unity psychiatry Hospital for acute psychological treatment.  Patient Plotka was a resident of Defendant Diversicare of Big Springs, L.L.C.'s skilled nursing facility.  Patient Plotka was referred to Unity by Defendant Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Unity.  The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Diversicare of Big Springs, L.L.C. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Diversicare of Big Springs, L.L.C.  On or about February 15, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or February 1, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

68.     On or about February 1, 2015, Defendant Malhotra, IBH, and Unity gave patient Pltoka opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about February 15, 2017.

69.     On or about February 1, 2017, patient E.S. was referred and admitted to Defendant Unity for acute psychiatric treatment.  Patient E.S. was a resident of Defendant Athens Health and Rehabilitation, L.L.C. Patient E.S. was referred to Unity by Dr. Malhotra/IBH in violation of the Stark Act given their financial relationship with Unity.  The referral was induced by unlawful

kickbacks between Defendants Malhotra /IBH and Defendant Athens Health and Rehabilitation, L.L.C. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Athens Health and Rehabilitation, L.L.C. On or about February 15, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or February 1, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

70.     On or about February 1, 2015, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient E.S. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about February 15, 2017.

71.     On or about February 1, 2017, patient I.B. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient I.B. was a resident of Defendant Athens Health and Rehabilitation, L.L.C. Patient I.B. was referred to Defendant Unity by Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity.  The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Athens Health and Rehabilitation, L.L.C.  in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Athens Health and Rehabilitation, L.L.C.  On or about February 15, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or February  1, 2017 that the

services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

72.     On or about February 1, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient I.B. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about February 15, 2017.

73.     On or about February 1, 2017, patient N.M. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient I.B. was a resident of Defendant Madison Manor Nursing Home, L.L.C. Patient I.B. was referred to Defendant Unity by Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity.  Defendant Madison Manor's referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Madison Manor Nursing Home, L.L.C. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Madison manor Nursing Home, L.L.C.  On or about February 16, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or February 1, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

74.     On or about February 1, 2017, Defendant Malhotra, IBH, and Unity gave the patient opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a

different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about February 15, 2017.

75.     On or about February 1, 2017, patient E.C. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient E.C. was a resident of Defendant Madison Manor Nursing Home, L.L.C. Patient E.C.  was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act.  The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Madison Manor Nursing Home, L.L.C. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Madison Manor Nursing Home, L.L.C.  On or about February 15, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or February  1, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

76.     On or about February 1, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave the patient opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs, on or about February 15, 2017.

77.     On or about February 1, 2017, patient Hamm was referred to Defendant Unity for acute psychiatric treatment. Patient Hamm was a resident of Defendant American Health Partners' skilled nursing facility Patient Hamm was referred to Defendant Unity by Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant American

Health Partners in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant American Health Partners.   On or about February 15, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or February 1, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

78.     On or about February 1, 2017, Defendant Malhotra, IBH, and Unity gave patient Hamm opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about February 15, 2017.

79.     On or about February 7, 2017, patient R.B. was referred to Defendant Unity Psychiatry Hospital for acute psychological treatment. Patient R.B. was resident of Defendant Brookdale's Senior Living Community, Inc. Patient R.B. was referred to Unity by Dr. Malhotra and IBH in violation of the Stark Act given their relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Brookdale Senior Living Community, Inc. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Brookdale's Senior Living Community, Inc.  On or about February 21, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or February 7, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

80.     On or about February 7, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient R.B. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about February 21, 2017.

81.     On or about March 1, 2017, patient A.L. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient A.L. was a resident of Defendant Valley View Health and Rehabilitation, L.L.C.  Patient A.L. was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act given their financial relationship with Defendant Unity.  The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Valley View Health and Rehabilitation, L.L.C. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Valley View Health and Rehabilitation, L.L.C.  On or about March 15, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or March 1, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

82.     On or about March 1, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient A.L. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about March 15, 2017.

83.     On or about March 3, 2017, patient M.S. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient M.S. was a resident of Defendant Regency Health Care & Rehab Center skilled nursing facility. Patient M.S. was referred to Defendant Unity by Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Regency Health Care & Rehab in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Regency Health Care & Rehab Center.   On or about March 17, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or March 3, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

84.     On or about March 3, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient M.S. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about March 17, 2017.

85.     On or about March 4, 2017, patient M.W. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient M.W. was a resident of Defendant American Health Partners skilled nursing facility. Patient M.W. referred to Defendant Unity by Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant American Health Partners in violation of the Anti-Kickback statute in light of the quid pro quo

arrangement between Defendants Malhotra, IBH, and Defendant American Health Partners. On or about March 20, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or March 4, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

86.     On or about March 4, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient M.W. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about March 20, 2017.

87.     On or about March 9, 2017, patient C.J. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient C.J. was a resident of Defendant Diversicare of Big Springs skilled nursing facility. Patient C.J. was referred to Defendant Unity by Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Diversicare of Big Springs in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Diversicare of Big Springs. On or about March 23, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or March 9, 2017, that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

88.     On or about March 9, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient C.J. opioids to treat periodic psychosis. However, before making a proper

assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about March 23, 2017.

89.    On or about March 10, 2017, patient M.S. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient M.S. was a patient/resident of Defendant American Health Partners skilled nursing facility. Patient M.S. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant American Health Partners in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant American Health Partners.    On or about March 24, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or march 10, 2017, that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

90.    On or about March 10, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient M.S. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs, on or about March 24, 2017.

91.    On or about March 13, 2017, patient G.C. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient G.C. was a resident of Defendant NHC Moulton, Inc.'s skilled nursing facility. Patient G.C. was referred to Defendant Unity by Dr. Malhotra and

IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant NHC Moulton, Inc. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant NHC Moulton Inc.  On or about March 27, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or March 12, 2017, that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

92.     On or about March 13, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave G.C. patient opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about March 27, 2017.

93.     On or about March 15, 2017, patient E.S. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient E.S. was a resident of Defendant South Hampton Nursing & Rehabilitation Center, Inc.'s skilled nursing facility. Patient E.S. was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant South Hampton Nursing & Rehabilitation Center, Inc. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant South Hampton Nursing & Rehabilitation Center, Inc.  On or about March 29, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications

to Medicare/Medicaid on or March 15, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

94.     On or about March 15, 2017, Defendant Malhotra, IBH, and Unity gave the patient opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs, on or about March 29, 2017.

95.     On or about March 15, 2017, patient R.M. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient R.M. was a resident of Defendant Regency Health Care & Rehab Center's skilled nursing facility. Patient R.M. was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act given their financial relationship with Defendant Unity.  The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Regency Health Care & Rehab Center in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Regency Health Care & Rehab Center.  On or about March 29, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or March 15, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

96.     On or about March 15, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient R.M. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued

and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about March 29, 2017.

97.     On or about March 17, 2017, patient N.S. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient N.S. was resident of Defendant Hanceville Health and Rehabilitation, Inc.  Patient N.S. was referred to Defendant Unity by Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Hanceville Health and Rehab, Inc. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Hanceville Health and Rehabilitation, Inc.   On or about March 31, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or March 17, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

98.     Defendant Malhotra, IBH, and Unity gave patient N.S. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs, on or about March 31, 2017.

99.     On or about March 17, 2017, patient Y.J. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient Y.J. was resident of Defendant River City Center's skilled nursing facility. Patient Y.J. was referred to Defendant Unity by Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity.  The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant River City

Center in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant River City Center.  On or about March 31, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or March 17, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

100.    On or about March 17, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient Y.J. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs, on or about March 31, 2017.

101.    On or about March 20, 2017, patient R.M. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient R.M. was a patient of Defendant Heritage Assisted Living & Memory Care, LLC's skilled nursing facility. Patient R.M. was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act given their financial relationship with Defendant Unity. Defendant Heritage's referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Heritage Assisted Living & Memory Care, L.L.C in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Heritage Assisted Living & Memory Care, L.L.C.   On or about April 3, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or March 20, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

102.    On or about March 20, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient R.M. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about April 3, 2017.

103.    On or about March 20, 2017, patient L.M. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient L.M. was a resident of Defendant Diversicare Leasing Corporation's (Brookshire) skilled nursing facility. Patient L.M. was referred to Defendant Unity by Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Diversicare Leasing Corporation in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Diversicare Leasing Corporation.   On or about April 3, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or  March 20, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

104.    On or about March 20, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient L.M. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs, on or about April 3, 2017.

105.    On or about March 22, 2017, patient D.B. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient D.B. was a resident of Defendant Signature HealthCare of Whitesburg Garden's skilled nursing facility. Patient D.B. was referred to Defendant Unity by Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Signature Healthcare of Whitesburg Garden in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Signature Healthcare of Whitesburg Garden.  On or about April 5, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or March 22, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

106.    On or about March 22, 2017, in Huntsville, Alabama, =Defendant Malhotra, IBH, and Unity gave patient D.B. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about April 15, 2017.

107.    On or about March 22, 2017, patient A.C. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient A.C. was a resident of Defendant Hanceville Nursing and Rehabilitation, Inc. Patient A.C. was referred to Defendant Unity by Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Hanceville Nursing and Rehab, Inc. in violation of the Anti-Kickback statute in light of the quid pro quo

arrangement between Defendants Malhotra, IBH, and Defendant Hanceville Nursing and Rehabilitation, Inc.  On or about April 5, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or April 22, 2017, that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

108.    On or about March 22, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave the patient opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs, on or about April 22, 2017.

109.    On or about March 24, 2017, patient R.B. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient R.B. was a resident of Defendant Athens- Limestone Health Services, L.L.C. Patient R.B. was referred to Defendant Unity by Defendant Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Athens-Limestone Health Services, L.L.C. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Athens=Limestone Health Services, L.L.C.   On or about April 7, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or March 24, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

110.    On or about March 24, 2017, Defendant Malhotra, IBH, and Unity gave the patient opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about April 7, 2017.

111.    On or about April 1, 2017, patient L.B. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient L.B. was a resident of Defendant Valley View Health and Rehabilitation, L.L. C's skilled nursing facility. Patient L.B. was referred to Defendant Unity by Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity.   The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Valley View Health and Rehabilitation, L.L.C. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Valley View Health and Rehabilitation, L.L.C.   On or about April 21, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or April 1, 2017 that the services rendered   for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

112.    On or about April 1, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient L.B. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about April 21, 2017.

113.    On or about April 3, 2017, patient K.M. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient K.M. was a resident of Defendant Athens-Limestone Health Services, L.L.C. Patient K.M. was referred to Defendant Unity by Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Athens-Limestone Health Services, L.L.C.  in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Athens-Limestone Health Services, L.L.C.   On or about April 17, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or April 3, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

114.    On or about April 3, 2017 Defendant Malhotra, IBH, and Unity gave patient K.M. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs, on or about April 17, 2017.

115.    On or about April 4, 2017, patient P.F. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient P.F. was a resident of Defendant Heritage Assisted Living & Memory Care, L.L. C's skilled nursing facility. Patient P.F. was referred to Defendant Unity by Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Heritage Assisted Living & Memory Care, L.L.C in violation of the

Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Heritage Assisted Living & Memory Care, L.L.C.  On or about April 18, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or April 4, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

116.    On or about April 4, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient P.F. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs, on or about April 18, 2017.

117.    On or about April 7, 2017, patient D.T. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient D.T. was a resident of Defendant Diversicare of Big Springs skilled nursing facility. Patient D.T. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Diversicare of Big Springs in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Diversicare of Big Springs. On or about April 21, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or April 7, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

118.    On or about April 7, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient P.F. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about April 21, 2017.

119.    On or about April 7, 2017, patient E.H. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient E.H. was a resident of Defendant Diversicare of Big Springs skilled nursing facility. Patient E.H. referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Diversicare of Big Springs in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Diversicare of Big Springs.   On or about April 21, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or April 7, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

120.    On or about April 7, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient E.H. opioids to treat periodic psychosis.  However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs, on or about April 21, 2017.

121.     On or about April 10, 2017, patient G.L. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient G.L. was a resident of Defendant Regency Health Care & Rehab Center's skilled nursing facility. Patient G.L.  was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Regency Health Care & Rehab Center in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Regency Health Care & Rehab Center.   On or about April 24, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or April 10, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

122.     On or about April 10, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient G.L. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about April 24, 2017.

123.     On or about April 12, 2017, patient M.O. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient M.O.  was resident of Defendant Diversicare of Big Springs skilled nursing facility. Patient M.O. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Diversicare of Big Springs in violation of the Anti-Kickback statute in light of the quid

pro quo arrangement between Defendants Malhotra, IBH, and Defendant Diversicare of Big Springs. On or about April 26, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or April 12, 2017, that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

124.    On or about April 12, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about April 26, 2017.

125.    On or about April 13, 2017, patient Y.T. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient Y.T. was resident of Defendant Regency Health Care and Rehab Center's skilled nursing facility. Patient Y.T. was referred to Defendant Unity by Defendant Dr. Malhotra and IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Regency Health Care and Rehab Center in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Regency Health Care and Rehab Center. On or about April 27, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or April 13, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

126.     On or about April 13, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient Y.T. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about April 27, 2017.

127.     On or about April 13, 2017, patient L.L. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient L.L. was a resident of Defendant Regency Health Care & Rehab Center's skilled nursing homes. Patient L.L. was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act given their financial relationship with Defendant Unity.  The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Regency Health Care & Rehab Center in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Regency Health Care & Rehab Center.   On or about April 27, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or April 13, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

128.     On or about April 13, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient L.L. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about April 27, 2017.

129.    On or about April 14, 2017, patient Y.T. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient Y.T. was a resident of Defendant Regency Health Care & Rehab Center's skilled nursing facility. Patient Y.T.  was referred to Defendant Unity by Defendant Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Regency Health Care & Rehab Center in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Regency Health Care & Rehab Center.  On or about April 28, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or April 14, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

130.    On or about April 14, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave the patient opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about April 28, 2017.

131.    On or about April 17, 2017, patient P.M. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient P.M. was a resident of Defendant Diversicare of Big Springs' skilled nursing facility.  Patient P.M. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity.  The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Diversicare of Big Springs in violation of the Anti-Kickback statute in light of the quid

pro quo arrangement between Defendants Malhotra, IBH, and Defendant Diversicare of Big Springs.  On or about May 1, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or April 17, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

132.    On or about, April 17, 2017, Defendant Malhotra, IBH, and Unity gave patient P.M. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about May 1, 2017.

133.    On or about April 18, 2017, patient J.T. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient J.T. was a patient of Defendant Huntsville Health and Rehabilitation, LLC. Patient J.T. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Huntsville Health and Rehabilitation, LLC in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Huntsville Health and Rehabilitation.   On or about May 2, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or April 18, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

134.    On or about April 18, 2017, Defendant Malhotra, IBH, and Unity gave patient J.T. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about May 2, 2017.

135.    On or about April 20, 2017, patient J.M. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient J.M. was a resident of Defendant Regency Health Care & Rehab Center's nursing skills homes. Patient J.M. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Regency Health Care and Rehab Center in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Regency Health Care & Rehab Center.  On or about May 4, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or April 20, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

136.    On or about April 20, 2017, Defendant Malhotra, IBH, and Unity gave patient J.M. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about May 4, 2017.

137.    On or about April 25, 2017, patient J.L. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient J.L. was a patient Defendant Athens Health and Rehabilitation, LLC. Patient J.L. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act.  The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Athens Health and Rehabilitation, LLC in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Athens Health and Rehabilitation, L.L.C.   On or about May 9, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or April 25, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

138.    On or about April 25, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient J.L. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about May 9, 2017.

139.    On or about May 2, 2017, patient M.M. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient M.M. was a resident of Defendant Regency Health Care & Rehab Center's skilled nursing facility. Patient M.M. was referred to Defendant Unity by Defendant Dr. Malhotra and IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Regency Health Care & Rehab Center in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Regency Health Care & Rehab Center. On or

about May 16, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or May 2, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules. .

140.     On or about May 2, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient M.M. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about May 16, 2017.

141.     On or about May 3, 2017, patient H.C. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient H.C. was a resident of Defendant Valley View Health and Rehabilitation, L.L. C's skilled nursing home. Patient H.C. was referred to Defendant Unity by Defendant Dr. Malhotra/IBH in violation of the Stark Act.  The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Valley View Health and Rehabilitation, L.L.C in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Valley View Health and Rehabilitation, L.L.C.  On or about May 17, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or May 3, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

142.     On or about May 3, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient H.C. opioids to treat periodic psychosis. However, before making a proper

assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about May 17, 2017.

143.    On or about May 4, 2017, patient A.P. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient A.P. was a patient of Defendant Athens Health and Rehabilitation, L.L.C. Patient A.P.  was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Athens Health and Rehabilitation, L.L.C. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Athens Health and Rehabilitation, L.L.C. On or about May 18, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or May 3, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

144.    On or about May 4, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient A.P. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on May 18, 2017.

145.    On or about May 4, 2017, patient A.R. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient A.R. was a resident of Defendant Valley View Health and Rehabilitation, L.L.C.'s skilled nursing facility. Patient A.R. was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act.    The referral was induced by unlawful

kickbacks between Defendants Malhotra/IBH and Defendant Valley View Health and Rehabilitation, L.L.C. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Valley View Health and Rehabiliation. On or about May 18, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or May 3, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

146.    On or about May 4, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave the patient opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effective, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about May 18, 2017.

147.    On or about May 4, 2017, patient A.O. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient A.O. was a resident of Defendant NHC Healthcare/ Moulton, Inc. skilled nursing facility. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant NHC Healthcare/Moulton, Inc. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant NHC Healthcare/Moulton, Inc. On or about May 18, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or May 4, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

148.    On or about May 4, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave the patient opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about May 18, 2017.

149.    On or about May 5, 2017, patient B.B. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient B.B. was a patient of Defendant Athens Health and Rehabilitation, L.L.C. Patient B.B. was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Athens Health and Rehabilitation, L.L.C. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Athens Health and Rehabilitation, L.L.C. On or about May 19, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or May 5, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

150.    On or about May 5, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave the patient opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about May 19, 2017.

151.    On or about May 16, 2017, patient B.B. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient B.B. was a resident of Defendant Regency Health

Care & Rehab Center's skilled nursing facility. Patient B.B. was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act.  The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Regency Health Care & Rehab Center in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Regency Health Care & Rehab Center.  On or about May 30, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or May 16, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

152.    On or about May 16, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient B.B. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effective, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about May 30, 2017.

153.    On or about May 24, 2017, patient B.S. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient B.S. was a resident of Defendant Regency Health Care & Rehab Center's skilled nursing facility. Patient B.S. was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act.  The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Regency Health Care & Rehab Center in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Regency Health Care & Rehab Center.  On or about June 6, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to

Medicare/Medicaid on or May 24, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

154.    On or about May 24, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient B.S. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about June 6, 2017.

155.    On or about May 24, 2017, patient C.L. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient C.L. was a resident of Defendant River City Center skilled nursing facility. Patient C.L. was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant River City Center in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant River City Center. On or about June 7, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or May 24, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

156.    On or about May 24, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave the patient opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about June 7, 2017.

157.    On or about May 30, 2017, patient D.F. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient D.F. was a resident of Defendant American Health Partners' skilled nursing facility. Patient D.F. was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant American Health Partners in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant American Health Partners.  On or about June 12, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or May 3, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

158.    On or about May 30, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient D.F. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about June 12, 2017.

159.    On or about May 31, 2017, patient K.S. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient K.S. was a resident of Defendant Diversicare of Big Springs skilled nursing facility. Patient K.S. was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Diversicare of Big Springs in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Diversicare of Big Springs.  On or about June 13, 2017, in Huntsville, Alabama, false or fraudulent

claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or May 31, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

160. On or about May 31, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient K.S. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about June 13, 2017.

161. On or about May 31, 2017, patient A.W. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient A.W. was a resident of Defendant Brookdale Senior Living Communities, Inc.'s skilled nursing facility. Patient A.W. was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Brookdale Senior Living Communities, Inc. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Brookdale Senior Living Communities, Inc. On or about June 13, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or May 31, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

162. On or about May 31, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient A.W. opioids to treat periodic psychosis. However, before making a proper

assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about June 13, 2017.

163.    On or about June 2, 2017, patient W.P. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient W.P. was a resident of Defendant Valley View Health and Rehabilitation, LLC's skilled nursing facility. Patient W.P. was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Valley View Health and Rehabilitation, L.L.C. On or about June 16, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or June 2, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

164.    On or about June 2, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient W.P. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about June 16, 2017.

165.    On or about June 2, 2017, patient R.L. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient R.L. was a resident of Defendant River City Center's skilled nursing facility. Patient R. L. was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants

Malhotra/IBH and Defendant River Center in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant River City Center. On or about June 16, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or June 2, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

166.    On or about June 2, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave the patient opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about June 16, 2017.

167.    On or about June 6, 2017, patient S.C. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient S.C. was a resident of Summerford Nursing Home, Inc.'s skilled nursing facility. Patient S.C. was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Summerford Nursing Home, Inc. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Summerford Nursing Home, Inc.  On or about June 20, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or June 6, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

168.    On or about June 6, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient S.C. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about June 20, 2017.

169.    On or about June 7, 2017, patient J.S. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient J.S. was referred to Defendant Unity by Defendant Diversicare of Big Springs in violation of the Stark Act. Defendant Diversicare of Big Springs' referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Diversicare of Big Springs in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Diversicare of Big Springs.  On or about June 21, 2017, in Huntsville, Alabama, false claims were submitted by Defendants Unity, Malhotra/IBH to Medicare/Medicaid. The false claims were paid by Medicare/Medicaid based on Defendants' misrepresentations via false and/or fraudulent certifications that the services rendered were legal.

170.    On or about June 7, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave the patient opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about June 21, 2017.

171.    On or about July 1, 2017, patient D.J. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient D.J.  was a resident of Defendant Diversicare Windsor House, L.L.C's skilled nursing facility. Patient D.J. was referred to Defendant Unity by Dr.

Malhotra/IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Diversicare Windsor House, L.L.C in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Diversicare Windsor House, L.L.C. On or about June 10, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or July 1, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

172.    On or about July 1, 2017, in Huntsville, Alabama Defendant Malhotra, IBH, and Unity gave patient D.J. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about July 10, 2017.

173.    On or about July 1, 2017 patient Klundt was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient Klundt was a resident of Defendant River City Center skilled nursing facility. Patient Klundt was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant River City Center in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant River City Center. On or about July 17, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or July 1, 2017 that the services rendered

for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

174.    On or about July 1, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave the patient opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about July 17, 2017.

175.    On or about July 5, 2017 patient M.H. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient M.H. was a resident of Defendant American Health Partners' skilled nursing facility. Patient M.H. was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant American Health Partners in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant American Health Partners. On or about July 19, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or July 5, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

176.    On or about July 5, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient M.H. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about July 19, 2017.

177.     On or about July 13, 2017 patient P.K. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient P.K. was a resident of Defendant NHC Healthcare/ Moulton, Inc.'s skilled nursing facility. Patient R.K. referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant NHC Healthcare/Moulton, Inc. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant NHC Healthcare/Moulton, Inc. On or about July 13, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or July 13, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

178.     On or about July 13, 2017, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient P.K. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about July 27, 2017.

179.     On or about July 14, 2017, patient T.K. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient T.K. was a resident of Defendant American Health Partners' skilled nursing facility. Patient T.K. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act. Defendant American Health Partners referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant American Health Partners in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant American Health Partners. On or about June

28, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or July 14, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

180.    On or about July 14, 2017, Defendant Malhotra, IBH, and Unity gave patient T.K. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about June 28, 2017.

181.    On or about July 20, 2017 patient B.P. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient B.P. was a resident of Defendant Heritage Assisted Living & Memory Care, L.L.C.'s skilled nursing facility. Patient B.P. referred to Defendant Unity by Dr. Malhotra and IBH in violation of the Stark Act.  The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Heritage Assisted Living & Memory Care, L.L.C. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Heritage Assisted Living & Memory Care, L.L.C.  On or about August 3, 2017, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or July 20, 2017 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

182.    On or about July 20, 2017, Defendant Malhotra, IBH, and Unity gave patient B.P. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's

effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about August 3, 2017.

183.    On or about August 1, 2018, patient J.B. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient J.B. was a resident of Defendant American Health Partners' skilled nursing facility. Patient J.B. was referred to Defendant Unity by Dr. Malhotra/IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant American Health Partners in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant American Health Partners.  On or about August 15, 2018, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or August 1, 2018 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

184.    On or about August 1, 2018, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient J.B. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about August 15, 2018.

185.    On or about August 1, 2018, patient R.T. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient R.T. was a resident of Defendant American Health Partners skilled nursing facility. Patient R.T. was referred to Defendant Unity by Defendant Dr.

Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH, and Defendant American Health Partners in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant American Health Partners. On or about August 15, 2018, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or August 1, 2018 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

186. On or about August 1, 2018, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient R.T. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about August 15, 2018.

187. On or about August 1, 2018, patient D.L. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient D.L. was a resident of Defendant Regency Health Care & Rehab Center's skilled nursing facility. Patient D.L. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Regency Health Care & Rehab Center in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Regency Health Care & Rehab Center. On or about August 15, 2018, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false

certifications to Medicare/Medicaid on or August 1, 2018 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

188.    On or about August 1, 2018, Defendant Malhotra, IBH, and Unity gave patient D.L. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about August 15, 2018.

189.    On or about August 1, 2018, patient D.D. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient D.D. was a patient of Defendant Athens-Limestone Health Services, L.L.C. Patient D.D. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Athens-Limestone Health Services, L.L.C. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Athens-Limestone Health Services, L.L.C.  On or about August 15, 2018, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or August 1, 2018 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

190.    On or about August 1, 2018, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient D.D. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued

and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about August 15, 2018.

191.    On or about August 2, 2018, patient D.N. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient D.N. was resident of Defendant Regency Health Care & Rehab Center skilled nursing facility. Patient D.N. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act.  The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Regency Health Care & Rehab Center in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Regency Health Care & Rehab Center.  On or about August 16, 2018, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or about August 2, 2018  that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

192.    On or about August 2, 2018, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient D.N. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about August 16, 2018.

193.    On or about August 6, 2018, patient W.H. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient W.H. was a patient of Defendant Huntsville Health and Rehabilitation, L.L.C. Patient W.H. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and

Huntsville Health and Rehabilitation, L.LC. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Huntsville Health and Rehabilitation, L.L.C.  On or about August 21, 2018, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or August 6, 2018 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

194.     On or about August 6, 2018, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient W.H. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effective, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about August 21, 2018.

195.     On or about August 9, 2018, patient J.M. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient J. M.  was resident of Defendant Merrill Gardens, L.L.C.   Patient J.M.  was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Merrill Gardens, L.L.C. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Merrill Gardens, L.L.C.  On or about August 21, 2018, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or August 9, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

196.    On or about August 9, 2018, Defendant Malhotra, IBH, and Unity gave patient J.M. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about August 21, 2018.

197.    On or about August 13, 2018, patient P.H. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient P.H. was resident of Defendant Diversicare of Big Springs, L.L.C.  Patient P.H. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Diversicare of Big Springs, L.L.C. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Diversicare of Big Springs, L.L.C.  On or about August 28, 2018, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or August 13, 2018 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

198.    On or about August 13, 2018, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient P.H.  opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about August 28, 2018.

199.    On or about August 31, 2018, patient G.M. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient G.M. was a resident of Defendant Heritage Assisted Living & Memory Care, L.L.C. skilled nursing facility. Patient G.M. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Heritage Assisted Living & Memory Care, L.L.C. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Heritage Assisted Living & Memory Care, L.L.C.  On or about September 14, 2018, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or August 31. 2018 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

200.    On or about August 31, 2018, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient G.M. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about September 14, 2018.

201.    On or about October 1, 2018, patient R.B. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient R.B. was a resident of Defendant Valley View Health and Rehabilitation, L.L.C. Patient R.B. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Valley View Health and Rehabilitation, L.L.C. in violation of the Anti-Kickback statute

in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Valley View Health and Rehabilitation, L.L.C.   On or about October 16, 2018, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or October 1, 2018 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

202.   On or about October 1, 2018, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient R.B. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about October 16, 2018.

203.   On or about October 4, 2018, patient G.O. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient G.O. was a resident of Defendant American Health Partners' skilled nursing facility. Patient G.O. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant American Health Partners in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant American Health Partners.  On or about October 18, 2018, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or October 4, 2018 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

204.     On or about October 4, 2018, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient G.O. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about October 18, 2018.

205.     On or about January 21, 2019, patient J.S. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient J.S. was a resident of Defendant Cloverdale Rehabilitation & Nursing Center's skilled nursing facility. Patient J.S. was referred to Defendant Unity by Defendant Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Cloverdale Rehabilitation & Nursing Center in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Cloverdale Rehabilitation & Nursing Center.  On or about February 5, 2019, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or January 21, 2017 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

206.     On or about January 21, 2019, Defendant Malhotra, IBH, and Unity gave patient J.S. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about February 5, 2019.

207.    On or about January 28, 2019, patient J.T. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient J.T. was resident of Defendant Heritage Assisted Living & Memory Care, L.L.C. Patient J.T. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Heritage Assisted Living & Memory Care, L.L.C. in violation of the Anti-Kickback statute  in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Heritage Assisted Living & Memory Care, L.L.C. On or about February 12, 2019, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or January 28, 2019 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

208.    On or about January 28, 2019, Defendant Malhotra, IBH, and Unity gave J.T. patient opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about February 12, 2019.

209.    On or about January 29, 2019, patient I.M. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient I.M. was resident of Defendant Diversicare Leasing Corporation. Patient I.M. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Diversicare Leasing Corporation in violation of the Anti-Kickback statute in light of the quid pro

quo arrangement between Defendants Malhotra, IBH, and Defendant Diversicare Leasing Corporation.  On or about February 12, 2019, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or January 29, 2019 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

210.    On or about January 29, 2019, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient I.M. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about February 12, 2019.

211.    On or about January 30, 2019, patient J.R. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient J.R. was a resident of Defendant HarborChase of Birmingham, Inc.'s skilled nursing facility. Patient J.R. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant HarborChase of Birmingham, Inc. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant HarborChase of Birmingham, Inc.  On or about February 13, 2019, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or January 30, 2019 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

212. On or about January 30, 2019, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient J.R. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about February 13, 2019.

213. On or about January 30, 2019, patient E.D. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient E.D. was a resident of Defendant HarborChase of Birmingham, Inc.'s skilled nursing facility. Patient E.D. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant HarborChase of Birmingham, Inc. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant HarborChase of Birmingham, Inc. On or about February 8, 2019, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or January 30, 2019 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

214. On or about January 30, 2019, in Huntsville, Alabama, Defendants Malhotra, IBH, and Unity gave patient E.D. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on February 8, 2019.

215.    On or about February 4, 2019, patient L.C. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient L.C. was a patient Defendant Athens Health and Rehabilitation, L.LC. Patient L.C. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Athens Health and Rehabilitation, L.L.C. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Athens Health and Rehabilitation, L.L.C.  On or about February 19, 2019, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or February 4, 2019 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

216.    On or about February 4, 2019, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient L.C. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effective, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on February 19, 2019.

217.    On or about February 4, 2019, patient E.S. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient E.S. was a resident of Defendant Brookdale Senior Living Communities, L.L.C.'s skilled nursing facility. Patient E.S. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity.  The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Brookdale Senior Living Communities, L.L.C.  in

violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Brookdale Senior Living Communities, L.L.C.    On or about February 14, 2019, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or February 4, 2019 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

218.    On or about February 4, 2019, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient E.S.  opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about February 14, 2019.

219.    On or about February 7, 2019, patient S.K. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient S.K. was resident of Defendant Merrill Gardens, L.L.C.'s skilled nursing facility. Patient S.K. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Merrill Gardens, L.L.C. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Merrill Gardens, L.L.C.    On or about February 21, 2019, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or February 7, 2019 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

220.    On or about February 7, 2019, Defendant Malhotra, IBH, and Unity gave the patient opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about February 21,2019.

221.    On or about February 7, 2019, patient C.S. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient C.S. was a resident of Defendant Brookdale Senior Living Communities, Inc.'s skilled nursing facility. Patient C.S. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity. The referral was induced by unlawful kickbacks between Defendants Malhotra/IBH and Defendant Brookdale Senior Living Communities, Inc. in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Brookdale Senior Living Communities, Inc.   On or about February 21, 2019, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or February 7, 2019 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

222.    On or about February 7, 2019, Defendant Malhotra, IBH, and Unity gave patient C.S. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about February 21, 2019.

223.    On or about February 15, 2019, patient R.B. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient R.B. was a resident of Defendant Heritage Assisted Living & Memory Care, L.L.C.'s skilled nursing facility. Patient R.B. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act given their financial relationship with Defendant Unity.  The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Heritage Assisted Living & Memory Care, L.L.C.  in violation of the Anti-Kickback statute in light of the quid pro quo arrangement between Defendants Malhotra, IBH, and Defendant Heritage Assisted Living & Memory Care, L.L.C.   On or about March 1, 2019, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or February 15 2019 that the services rendered  for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

224.    On or about February 15, 2019, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient R.B. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about March 1, 2019.

225.    On or about February 22, 2019, patient J.S. was referred and admitted to Defendant Unity for acute psychiatric treatment. Patient J.S. was a resident of Defendant Regency Health Care & Rehab Center's skilled nursing facility. Patient J.S. was referred to Defendant Unity by Defendants Dr. Malhotra and IBH in violation of the Stark Act. The referral was induced by unlawful kickbacks between Defendants Malhotra, IBH and Defendant Regency Health Care & Rehab Center in violation of the Anti-Kickback statute in light of the quid pro quo arrangement

between Defendants Malhotra, IBH, and Defendant Regency Health Care & Rehab Center. On or about March 8, 2019, in Huntsville, Alabama, false or fraudulent claims related to the above-referenced patient were submitted to and paid by Medicare/Medicaid based on Defendants' false certifications to Medicare/Medicaid on or February 22,2019 that the services rendered for said patient were in compliance with federal law and Medicare/Medicaid regulations and/or rules.

226.    On or about February 22, 2019, in Huntsville, Alabama, Defendant Malhotra, IBH, and Unity gave patient J.S. opioids to treat periodic psychosis. However, before making a proper assessment of the drug's effectiveness, Dr. Malhotra ordered that the treatment be discontinued and gave patient a different opioid, which resulted in double billing to the Medicare/ Medicaid programs on or about February March 8, 2019.

## COUNT I
### (False Claims)

**Violation of the False Claims Act, 31 U.S.C. §3729(a)(1)(A)**

227.    Plaintiff re-alleges paragraphs 44-226 as if set forth fully herein.

228.    Defendants Dr. Malhotra, IBH, and Unity have knowingly presented or caused to be presented, a false or fraudulent claim for payment or approval, in the form of billings to Medicare/Medicaid. The claims were false and fraudulent because the payments are the results of illegal kickback in violation of the Anti-Kickback Statute. The payments are also false/fraudulent because they violate statutory prohibition against physician self-referrals under the Stark Act. Additionally, the claims are false because Defendants Dr. Malhotra, IBH, and Unity falsely certified that the payments were lawful.

229.    By reason of the violation of 31 U.S.C. §3729 (a)(1)(A), Defendants have

knowingly or recklessly damaged the United States Government in an amount to be determined at trial.

WHEREFORE, the Relators, on behalf of themselves and the United Sates Government, prays:

(a) That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of $11,000-$22,000 and/or the civil penalties as allowed by law and amended by the Federal Civil Penalties Adjustment Act be imposed for each action in violation of 31 U.S.C. §3729, and the cost of this action, with interest, including the cost to the United States Government for its expenses related to this action;

(b) That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relators necessarily incurred in bringing and pressing this case.

(c) That the Court grant permanent injunctive relief to prevent any recurrence of the unlawful acts for which redress is sought in this Complaint;

(d) That in the event that the United States Government proceeds with this action, the Relators be awarded an amount for bringing this action of at least 15%, but not more than 30%, of the proceeds of the action or settlement of the claims;

(e) That in the event that the United States Government does not proceed with this action, the Relators be awarded an amount that the Court decides is

reasonable for collecting the civil penalty and damages, which shall be no less than 25% nor more than 30% of the proceeds of the action or settlement;

(f)     That the Relators be awarded prejudgment interest;

(g)     That a trial by jury be held on all issues;

(h)     That the United States Government and the Relators receive all, both at law and at equity, to which they may reasonably be entitled.

## COUNT II
### (False Record/False Statement)

### Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B))

230.     Plaintiff realleges paragraphs 44-226 of the Complaint as if set forth fully herein.

231.     Defendants Dr. Malhotra, IBH, and Unity knowingly made, used or caused to be made or used, a false record or statement material to a false or fraudulent claim in the form of a false certification to Medicare/Medicaid that the billings were lawful and in the form of double billing to Medicaid/Medicare.

232.     By reason of the violation of 31 U.S.C. § 3729(a)(1)(B), Defendants have knowingly or recklessly damaged the United States Government in an amount to be determined at trial.

233.     Defendants Dr. Malhotra, IBH, and Unity have knowingly made, used or caused to be made or used, false records or statements material to a false or fraudulent claim.

234.     By reason of the violation of 31 U.S.C. §3729(a)(2), Defendants have knowingly or recklessly damaged the United States Government in an amount to be determined at trial.

WHEREFORE, the Relators, on behalf of themselves and the United Sates Government, prays:

(a)     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of $11,000-$22,000 and/or the civil penalties as allowed by law and amended by the Federal Civil Penalties Adjustment Act be imposed for each action in violation of 31 U.S.C. §3729, and the cost of this action, with interest, including the cost to the United States Government for its expenses related to this action;

(b)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relators necessarily incurred in bringing and pressing this case.

(c)     That the Court grant permanent injunctive relief to prevent any recurrence of the unlawful acts for which redress is sought in this Complaint;

(d)     That in the event that the United States Government proceeds with this action, the Relators be awarded an amount for bringing this action of at least 15%, but not more than 30%, of the proceeds of the action or settlement of the claims;

(e)     That in the event that the United States Government does not proceed with this action, the Relators be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be no less than 25% nor more than 30% of the proceeds of the action or settlement;

(f)     That the Relators be awarded prejudgment interest;

(g)     That a trial by jury be held on all issues;

(h)     That the United States Government and the Relators receive all, both at law and at equity, to which they may reasonably be entitled.

## COUNT III
### (Conspiracy)
**Violation of the False Claims Act, 31 U.S.C. §3729 a(1)(C)**

235.     Plaintiff realleges paragraphs 44-226 of the Complaint as if set forth fully herein.

236.     Defendants Dr. Malhotra, IBH, and Unity conspired to commit a violation of 31(a)(1)(a) and 3729 (a)(1)(B) with regard to prescribing multiple opioids for patients before properly assessing the efficacy of each drugs, which resulted in double billing to Medicare/Medicaid.

237.     By reason of the violation of 31 U.S.C. §3729(a)(1(C) and/or §3729(a)(1)(3), Defendants have knowingly or recklessly damaged the United States Government in an amount to be determined at trial.

WHEREFORE, the Relators, on behalf of themselves and the United Sates Government, prays:

(a)     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of $11,000-$22,000 and/or the civil penalties as allowed by law and amended by the Federal Civil Penalties Adjustment Act be imposed for each action in violation of 31 U.S.C. §3729, and the cost of this action, with interest, including the cost to the United States Government for its expenses related to this action;

(b)     That pre- and post-judgment interest be awarded, along with reasonable

attorneys' fees, costs, and expenses which the Relators necessarily incurred in bringing and pressing this case.

(c)     That the Court grant permanent injunctive relief to prevent any recurrence of the unlawful acts for which redress is sought in this Complaint;

(d)     That in the event that the United States Government proceeds with this action, the Relators be awarded an amount for bringing this action of at least 15%, but not more than 30%, of the proceeds of the action or settlement of the claims;

(e)     That in the event that the United States Government does not proceed with this action, the Relators be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be no less than 25% nor more than 30% of the proceeds of the action or settlement;

(f)     That the Relators be awarded prejudgment interest;

(g)     That a trial by jury be held on all issues;

(h)     That the United States Government and the Relators receive all, both at law and at equity, to which they may reasonably be entitled.

## COUNT III
### (Conspiracy)
### Violation of the False Claims Act, 31 U.S.C. §3729 a(1)(C)

238.    Plaintiff realleges paragraphs 44-226 of the Complaint as if set forth fully herein.

239.    Defendants Dr. Malhotra, IBH, Unity, and the skilled nursing facilities listed in paragraphs 11-31[4] conspired to commit a violation of the False Claims Act by violating the Anti-Kickback Statute (AKS) and Stark Law. By reason of the violation of 31 U.S.C. §3729(a)(1(C), Defendants have knowingly or recklessly damaged the United States Government in an amount to be determined at trial.

WHEREFORE, the Relators, on behalf of themselves and the United Sates Government, prays:

(i)    That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of $11,000-$22,000 and/or the civil penalties as allowed by law and amended by the Federal Civil Penalties Adjustment Act be imposed for each action in violation of 31 U.S.C. §3729, and the cost of this action, with interest, including the cost to the United States Government for its expenses related to this action;

(j)    That pre- and post-judgment interest be awarded, along with reasonable

---

[4] Athens-Limestone Health Services, L.L.C., Valley View Health and Rehabilitation, L.L.C., Franklin LTC, L.L.C. d/b/a Terrance Manor Nursing Home & Rehabilitation Center, Affinity Living Group, L.L.C. (Westminster in Decatur), Diversicare of Big Springs, L.L.C., Athens Health and Rehabilitation, L.L.C., Madison Manor Nursing Home, L.L.C., Brookdale Senior Living Community, L.L.C., Regency Senior Living, L.L.C. d/b/a Regency Health Care & Rehab Center, NHC Healthcare/Moulton, L.L.C., South Hampton Nursing & Rehabilitation Center, L.L.C., Hanceville Primary Healthcare, L.L.C., Sunbridge Healthcare, L.L.C. d/b/a/ River City Center, Heritage Assisted Living & Memory Care, L.L.C., Diversicare Leasing Corporation, Signature Healthcare Clinical Consulting Services, L.L.C. d/b/a Signature Healthcare of Whitesburg Garden, Hanceville Nursing and Rehabilitation, Inc., Huntsville Health and Rehabilitation, L.L.C., Summerford Nursing Home, Inc., Diversicare Windsor House, L.L.C., Merrill Gardens, L.L.C., Cloverdale Healthcare, Inc. d/b/a Cloverdale Rehabilitation & Nursing Center, and HarborChase of Birmingham, Inc.

attorneys' fees, costs, and expenses which the Relators necessarily incurred in bringing and pressing this case.

(k)   That the Court grant permanent injunctive relief to prevent any recurrence of the unlawful acts for which redress is sought in this Complaint;

(l)   That in the event that the United States Government proceeds with this action, the Relators be awarded an amount for bringing this action of at least 15%, but not more than 30%, of the proceeds of the action or settlement of the claims;

(m)   That in the event that the United States Government does not proceed with this action, the Relators be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be no less than 25% nor more than 30% of the proceeds of the action or settlement;

(n)   That the Relators be awarded prejudgment interest;

(o)   That a trial by jury be held on all issues;

(p)   That the United States Government and the Relators receive all, both at law and at equity, to which they may reasonably be entitled.

## COUNT IV
### (Concealment and Anti-Kickback)
### Violation of the False Claims Act, 31 U.S.C. § 3729a(1)(G) and violation of the Anti-Kickback Statute

240.   Plaintiff realleges paragraphs 44-226 of the Complaint as if set forth fully herein.

241.   The Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b(b), prohibits, amongst other things, paying kickbacks to induce referrals for services paid for under Federal healthcare programs. The AKS arose out of Congressional concern that payoffs to those who can influence healthcare decisions corrupt professional healthcare decision-making and may result in Federal

funds being diverted to pay for goods and services that are medically unnecessary, of poor quality, or even harmful to a vulnerable patient population. The AKS prohibits payment of kickbacks in ordered to protect the integrity of the Medicare program form these difficult to detect harms, First enacted in 1972, the AKS was strengthen in 1977 and 1987 to ensure that kickbacks masquerading as legitimate transactions do not evade in reach. See Social Security Amendments of 1972, Pub. L. No. 92-603, §§ 242(b) and (c); 42 U.S.C. § 1320a-7b, Medicare-Medicaid Antifraud and Abuse Amendments, Pub. L. No. 95-142; Medicare and Medicaid Patient and Program Protection Act of 1987, Pub. L. No. 100-93.

242.   The AKS prohibits any person or entity from making or accepting payment to induce or reward any person for referring, recommending or arranging for Federally funded medical items and services, including items and services provided under the Medicare program.

In pertinent part, the statute states:

(b) Illegal remuneration

***

(2) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly in cash or in kind to any person to induce such person-

(A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

(B) to purchase, lease, order or arrange for or recommend purchasing, leasing or ordering any good, facility, service, or items for which payment may be made in whole or in part under a Federal

health care program, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25, 000 or imprisoned for not more than five years, or both.

42 U.S.C. § 1320(a)-7b(b)(2). Violation of the statute can also subject the perpetrator to exclusion from participation in Federal health care programs and civil monetary penalties of up to $50,000 per violation and up to three times the amount of remuneration paid. 42 U.S.C. § 1320a-7(b)(7); 42 U.S.C. § 1320a-7a(a)(7).

243.    The Kickback scheme between Dr. Malhotra, IBH, Unity, and the skilled nursing facilities listed in paragraph 11-33[5] resulted in Dr. Malhotra, IBH, and Unity billing Medicare/Medicaid for tainted and illegal procedures performed by Dr. Malhotra, IBH, and Unity. Consequently, Dr. Malhotra, IBH, and Unity received payment from the Government for services performed pursuant to illegal referrals in violation of the Anti-Kickback Statute.

244.    Once Defendants were made aware that it billed Medicare/Medicaid and received payments from the Government for services proceed and performed in violation of the Anti-Kickback Statute and Stark Act, the Defendants failed to pay back to the Government money and/or funds it received as reimbursement payments from Medicare/Medicaid.

---

[5] Athens-Limestone Health Services, L.L.C., Valley View Health and Rehabilitation, L.L.C., Franklin LTC, L.L.C. d/b/a Terrance Manor Nursing Home & Rehabilitation Center, Affinity Living Group, L.L.C. (Westminster in Decatur), Diversicare of Big Springs, L.L.C., Athens Health and Rehabilitation, L.L.C., Madison Manor Nursing Home, L.L.C., Brookdale Senior Living Community, L.L.C., Regency Senior Living, L.L.C. d/b/a Regency Health Care & Rehab Center, NHC Healthcare/Moulton, L.L.C., South Hampton Nursing & Rehabilitation Center, L.L.C., Hanceville Primary Healthcare, L.L.C., Sunbridge Healthcare, L.L.C. d/b/a/ River City Center, Heritage Assisted Living & Memory Care, L.L.C., Diversicare Leasing Corporation, Signature Healthcare Clinical Consulting Services, L.L.C. d/b/a Signature Healthcare of Whitesburg Garden, Hanceville Nursing and Rehabilitation, Inc., Huntsville Health and Rehabilitation, L.L.C., Summerford Nursing Home, Inc., Diversicare Windsor House, L.L.C., Merrill Gardens, L.L.C., Cloverdale Healthcare, Inc. d/b/a Cloverdale Rehabilitation & Nursing Center, and HarborChase of Birmingham, Inc.

245.    The Defendants concealed or knowingly and improperly avoided an obligation to pay or transmit money or property to the Government in violation of 31 U.S.C. § 3729(a)(1)(G) and/or § 3729(a)(1)(7).

246.    By reason of the violation of 31 U.S.C. § 3729(a)(1)(G) and/ or §  3729(a)(1)(7), the Defendants have knowingly or recklessly damaged the United States Government in an amount to be determined at trial.

WHEREFORE, the Relators, on behalf of themselves and the United Sates Government, prays:

(a)    That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of $11,000-$22,000 and/or the civil penalties as allowed by law and amended by the Federal Civil Penalties Adjustment Act be imposed for each action in violation of 31 U.S.C. §3729, and the cost of this action, with interest, including the cost to the United States Government for its expenses related to this action;

(b)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relators necessarily incurred in bringing and pressing this case.

(c)    That the Court grant permanent injunctive relief to prevent any recurrence of the unlawful acts for which redress is sought in this Complaint;

(d)    That in the event that the United States Government proceeds with this action, the Relators be awarded an amount for bringing this action of at least

15%, but not more than 30%, of the proceeds of the action or settlement of the claims;

(e) That in the event that the United States Government does not proceed with this action, the Relators be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be no less than 25% nor more than 30% of the proceeds of the action or settlement;

(f) That the Relators be awarded prejudgment interest;

(g) That a trial by jury be held on all issues;

(h) That the United States Government and the Relators receive all, both at law and at equity, to which they may reasonably be entitled.

Respectfully submitted,

JERE L. BEASLEY (BEA020)
W. DANIEL "DEE" MILES, III (MIL060)
LARRY A. GOLSTON (GOL029)
LEON HAMPTON, JR (HAM105)
LAUREN MILES(MIL176)
Attorneys for Relator

OF COUNSEL:

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
272 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343
(334) 954-7555 FAX

**JURY DEMAND**

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.

Of Counsel

**FILED IN CAMERA AND UNDER SEAL**
**DO NOT SERVE DEFENDANT**