# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA, ex rel. JENNIFER COOK AND SALLY GAITHER,** | } } } } | |
| **Plaintiffs,** | } } | |
| **v.** | } } | **Case No.:  2:20-CV-877-RDP** |
| **INTEGRATED BEHAVIORAL HEALTH, INC., et al.,** | } } } } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This is a *qui tam*[1] action asserting claims under the False Claims Act ("FCA") against twenty-three Defendants, including Dr. Sanjay Malhotra, Integrated Behavioral Health ("IBH"), Unity Psychiatric Care, and various Nursing Home or Assisted Living Facilities (the "Facility Defendants"). (Doc. # 126 at ¶¶ 9-31). It is before the court on (1) the Nursing Facility[2] Defendants' Motion to Dismiss (Doc. # 139); (2) Defendant Sunbridge Healthcare, LLC d/b/a River Center City's Motion to Dismiss Second Amended Complaint (Doc. # 146); (3) Defendant Affinity Living Group, LLC's Motion to Dismiss Second Amended Complaint (Doc. # 150); (4)

---

[1] "In a *qui tam* action, [a] relator pursues the [G]overnment's claim against the defendant, and asserts the injury in fact [allegedly] suffered by the [G]overnment." *United States ex rel. Farmer v. Republic of Honduras*, 438 F. Supp. 3d 1321, 1325 (S.D. Ala. 2020).

[2] The Nursing Facility Defendants include: (1) BLC Wellington-Hampton Cove, LLC, (2) Diversicare of Big Springs, LLC, (3) Diversicare Windsor House, LLC, (4) NHC HealthCare/Moulton, LLC, Inc., (5) Regency Senior Living, LLC, (6) Merrill Gardens, LLC, (7) Madison Manor Nursing Home, LLC, (8) Athens Health & Rehabilitation, LLC, (9) Cloverdale Health Care, Inc. d/b/a Cloverdale Rehabilitation & Nursing Center, (10) Franklin LTC, LLC d/b/a Terrace Manor Nursing and Rehabilitation, (11) Heritage Assisted Living and Memory Care, LLC, (12) LP Huntsville, LLC d/b/a Signature of Whitesburg Gardens (incorrectly designated in the Second Amended Complaint as Signature Healthcare Clinical Consulting), (13) South Hampton Nursing & Rehabilitation Center, LLC, (14) Summerford Nursing Home, Inc., and (15) Valley View Health & Rehabilitation, LLC.

Defendant Unity Psychiatric Care's[3] Motion to Dismiss Relators' Second Amended Complaint (Doc. # 161); and (5) Defendants Integrated Behavioral Health, Inc. and Dr. Sanjay Malhotra's Motion for Summary Judgment (Doc. # 189). The Motions have been fully briefed. (Docs. # 140, 151, 171, 174, 175, 178, 179, 180, 181, 190, 192, 193, 194, 195, 198, 199, 201, 202, 215-20). After careful consideration, and for the reasons set forth below, Defendants' Motions to Dismiss (Docs. # 139, 146, 150, 161) are due to be granted, which renders the Motion for Summary Judgment filed by Integrated Behavioral Health, Inc. and Dr. Malhotra (Doc. # 189) moot, as all claims are due to be dismissed against all Defendants.

## I.    Background

Relators filed their original Complaint on June 22, 2020. (Doc. # 1). On March 1, 2021, after investigating Relators' allegations, the United States declined to intervene. (Doc. # 8). On May 7, 2021, Relators filed a First Amended Complaint. (Doc. # 11). On September 20, 2021, in response to Motions to Dismiss and a Motion for More Definite Statement directed at Relators' First Amended Complaint, the court held that the FAC was:

> a shotgun pleading. It is guilty of both "containing multiple counts where each count adopts the allegations of all preceding counts" and "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321, 1323 (11th Cir. 2015).

(Doc. # 118 at 2). The court granted the Motion for More Definite Statement and suggested that, in drafting their Second Amended Complaint, Relators should address some of the bases for

---

[3] Unity Psychiatric Care is the d/b/a name of Behavioral Healthcare Center at Huntsville, LLC, which is the correct name of the entity.

Defendants' Motions to Dismiss. Thereafter, Relators filed their Second Amended Complaint. (*Id.*).

### A.    The Allegations of the Second Amended Complaint[4]

Relators' Second Amended Complaint asserts the following claims:

1.    Count I alleges a violation of the FCA, 31 U.S.C. § 3729(a)(1)(A) against Dr. Malhotra, IBH, and Unity. (Doc. # 126 at 74-75). Count I alleges that Dr. Malhotra and IBH referred patients to Defendant Unity, while Dr. Malhotra had a financial relationship with Unity, in violation of the Stark Law.

2.    Count II alleges a violation of the FCA, 31 U.S.C. § 3729(a)(1)(A) against Dr. Malhotra, IBH, and Unity. (Doc. # 126 at 75-77). Count II alleges fraudulent billings to Medicare/Medicaid because billings were obtained through unlawful kickback in violation of the Anti-Kickback Statute.

3.    Count III alleges a violation of the FCA, 31 U.S.C. § 3729(a)(1)(B) against Dr. Malhotra, IBH, and Unity. (Doc. # 126 at 77-79). Count III alleges a false or fraudulent claim in the form of a false certification to Medicare/Medicaid that the billings were lawful.

4.    Count IV alleges a violation of the FCA, 31 U.S.C. § 3729(a)(1)(C) against Dr. Malhotra, IBH, Unity, and the Facility Defendants. (Doc. # 126 at 79-80). Count IV alleges that Defendants conspired to commit a violation of the FCA "vis-à-vis" the Anti-Kickback Statute.

5.    Count V alleges a violation of the FCA, 31 U.S.C. § 3729(a)(1)(C) against Dr. Malhotra, IBH, Unity, and the Facility Defendants. (Doc. # 126 at 81-82). Count V alleges that Defendants conspired to commit a violation of the FCA "vis-à-vis" the Stark Law.

6.    Count VI[5] alleges a violation of the FCA, 31 U.S.C. § 3729a(1)(G), the Anti-Kickback Statute, and the Stark Law against Dr. Malhotra, IBH, and Unity. (Doc. # 126 at 82). Count VI alleges that Dr. Malhotra, IBH, and Unity received payment from the Government for services performed pursuant to illegal referrals in violation of the Anti-Kickback Statute and the Stark Law and failed to pay that money back.

(Doc. # 126 at 74-86).

---

[4] In assessing Defendants' Motion to Dismiss (Doc. # 60), the court treats the factual allegations of the Second Amended Complaint as true, but not its legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

[5] Relators' Second Amended Complaint actually contains two Count IVs, but the court presumes that the one following Count V was intended to be Count VI. (Doc. # 126 at 79, 82).

Counts I and II of the Second Amended Complaint "re-allege[] paragraphs 47-212 as if set forth fully herein." (Doc. # 126 at ¶¶ 213, 216). Counts III through VI "re-allege[] paragraphs 57-212 as if set forth fully herein." (Doc. # 126 at ¶¶ 219, 224, 226, 228). Other than to re-allege the overwhelming majority[6] of the previous allegations of the Second Amended Complaint, each of the actual "Counts" of the Second Amended Complaint is utterly devoid of any factual allegations. (Doc. # 126 at 74-86).

Within paragraphs 47-212 of the Second Amended Complaint, which are realleged in each Count of the Second Amended Complaint, Relators include the following factual allegations:

Dr. Malhotra founded IBH, which "provides psychological treatment to mentally and emotional troubled individuals including aging adults." (Doc. # 126 at ¶ 52). In addition to practicing Psychiatry at IBH, Dr. Malhotra has medical privileges at various facilities, including Unity Psychiatric Care, where he is the Medical Director. (*Id.* at ¶¶ 53-54). Relator Gaither worked at Unity as a licensed practical nurse from October 17, 2012 until April 19, 2019. (*Id.* at ¶ 54). Relator Cook worked with Defendant American Health Partners, Inc. as a registered nurse from June 4, 2014 until April 19, 2019. Relator Cook also worked at Unity. (*Id.* at ¶ 55).

To enroll as Medicare providers, Dr. Malhotra and Unity "agree[d] to abide by the Medicare laws, regulations and program instructions [including] the Federal Anti-Kickback Statute ["AKS"] and the [] Stark Law []." (*Id.* at ¶ 42). Each time Dr. Malhotra and Unity submitted a claim to Medicare, the claim certified that:

---

[6] Paragraphs 1 through 31 of the Second Amended Complaint allege preliminary matters such as jurisdiction and venue, conditions precedent, and the identity of the parties. Paragraphs 32 through 41 of the Second Amended Complaint set forth the laws applicable to the claims. Paragraphs 47-212 contain the substance of the allegations of the Second Amended Complaint.

1) the information on this form is true, accurate and complete; 2) I have familiarized myself with all applicable laws, regulations, and program instructions, which are available from the Medicare contractor; 3) I have provided or will provide sufficient information required to allow the government to make an informed eligibility and payment decision; 4) this claim, whether submitted by me or on my behalf by my designated billing company, complies with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment including but not limited to the Federal anti-kickback statue and Physician Self-Referral law (commonly known as Stark law) [].

(*Id*. at ¶¶ 44-45). "The claims [] to Medicare/Medicaid [were] rendered false because the patients for which the claims were made were obtained through illegal kickbacks paid in the form of free nursing services in violation of the Anti-Kickback Statute." (*Id*. at ¶ 48). "Further, the claims [to Medicare/Medicaid were] rendered false because the patients for which the claims were made were referred as a result of an unlawful agreement [] to refer patients being treated by Dr. Malhotra and Defendant IBH's nurses at the nursing homes/assisted living facilities to an entity (e.g., Unity) where Dr. Malhotra had a financial relationship[7] in violation of the Stark Law." (*Id*. at ¶ 49). The Facility Defendants "agreed to allow Defendants Dr. Malhotra and IBH to refer patients to Defendant Unity, in exchange for free nursing services in violation of both the Anti-Kickback Statute and Stark Law." (*Id*. at ¶ 50).

More specifically, Relators allege that Dr. Malhotra and IBH staff the licensed nurse practitioners and nurses in various facilities and pay their salaries, and that in exchange for these free nursing services, the Facility Defendants allow Dr. Malhotra and IBH to refer patients to hospitals including Unity where Malhotra has a financial relationship in violation of the Stark Law. (*Id*. at ¶¶ 57(a), 59). They further allege that in submitting bills to Medicare, Dr. Malhotra and

---

[7] Relators do not provide any details about the substance of this "financial relationship."

Unity "falsely certify that the referral is not in violation of the Anti-Kickback Statute and Stark Law." (*Id*. at ¶ 57(b)). Relators allege this same series of events occurred at twenty facilities. (*Id*. at ¶ 58).

Relators allege that the Facility Defendants, through their agents, entered into a conspiratorial agreement with Dr. Malhotra, IBH, and their agents to refer patients to the facilities with which Dr. Malhotra has a financial relationship. (*Id*. at ¶ 60). They assert these referrals were induced by the free nursing services, which they claim is an unlawful kickback. (*Id*.). Relators allege approximate[8] dates when the Facility Defendants entered into the conspiratorial agreements with Dr. Malhotra and IBH, and they further allege the identity of the Facility Defendant employees who allegedly entered into the agreements. (*Id*. at ¶¶ 61, 66, 71, 74, 77, 80, 85, 90, 95, 100, 108, 111, 114, 117, 175, 180, 195, 200).

With regard to these alleged fraudulent referrals, Relators identify the Facility that made the referral and allege only approximate referral dates, although they have filed under seal an unredacted version of the Second Amended Complaint identifying the patients' full names. (Doc. # 126-2). With regard to the particular services for which these patients were referred, Relators simply allege that six of these patients were referred for "acute psychological treatment" and that sixty-one of them were referred for "acute psychiatric treatment." (Doc. # 126 at ¶¶ 61-212). There are no allegations relating to the particular services these patients actually received, the value of those services, or the value of the alleged fraudulent claims. (*Id*.). Nor are there any specific allegations about who actually submitted any bills to Medicare or the amounts received on that

---

[8] These agreements were all alleged to have been entered into "on or about" a certain date.

billing. (*Id.*). Nothing in the pleadings indicates that Relators have personal knowledge about their billing allegations. (*Id.*)

Relators generically allege that these referrals were "in violation of the Stark Law because of Defendant Dr. Malhotra's financial relationship with Unity." (*Id.*). However, they have not provided any factual detail about the terms of that financial relationship, nor have they explained what aspects of the relationship violated the Stark Law. (*Id.*). Relators allege that the referrals were in violation of the AKS because they were "made pursuant to the conspiratorial agreement" referred to in the preceding paragraphs of the Second Amended Complaint, *i.e.* they were made in exchange for free nursing services. (*Id.*).

In fact, there are basically three standard or "form" paragraphs in this section of the Second Amended Complaint. (*Id.*). The first type of paragraph alleges the entry into the conspiratorial agreement with a particular facility. The second type of paragraph alleges information regarding the patient name or initials and states that the patient received either acute psychological or psychiatric treatment. The third type of paragraph alleges that a CMS Form 1500 was submitted to Medicare to be reimbursed for services provided to the patient. (*Id.*).

## II.     Pleading Requirements in False Claims Act Cases

### A.     Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that include nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor will

"labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion, the court views a complaint's allegations in the light most favorable to the non-movant. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" a complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). The task is context specific and, to survive the motion, allegations must permit the court, based on its "judicial experience and common sense ... to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a plausible claim, then dismissal is appropriate. *Twombly*, 550 U.S. at 570.

However, it is well settled that Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements apply to complaints alleging violations of the FCA. *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1309–10 (11th Cir. 2002). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 703 (11th Cir. 2014) (quoting *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir.2006) (quotation marks omitted)).

To satisfy this standard, a relator "must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Clausen*, 290 F.3d at 1310 (citations and internal quotation marks omitted). A relator must "allege the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the government." *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005). And, in doing so, "a relator must identify the particular document and statement alleged to be false, who made or used it, when the statement was made, how the statement was false, and what the defendants obtained as a result." *Mastej*, 591 F. App'x at 703–04 (quoting U.*S. ex rel. Matheny v. Medco Health Sols. Inc.*, 671 F.3d 1217, 1225 (11th Cir. 2012)).

**B.      The False Claims Act**

"The FCA imposes liability on any person who 'knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.'" *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1154 (11th Cir. 2017) (quoting 31 U.S.C. § 3729(a)(1)(A)–(B)). "Liability under the [FCA] arises from the submission

9

of a fraudulent claim to the government, not the disregard of government regulations or failure to maintain proper internal policies." *Corsello*, 428 F.3d at 1012. A relator may not "describe a private scheme in detail but then [merely] allege[,] without any stated reason for his belief[,] that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Clausen*, 290 F.3d at 1311. Instead, "some indicia of reliability must be given in the complaint to support the allegation of an actual false claim for payment being made to the Government." *Id*.

There are substantial economic incentives for persons to file a *qui tam* action. The FCA provides for penalties of $5,000–$10,000 per claim and treble damages. *Id*. at 1307–08 (citing 31 U.S.C. § 3729(a)). And, if the government declines to intervene (as here), the plaintiff-relator can receive 25–30% of any recovery and reasonable expenses and attorneys' fees. *Id*. at 1308 (citing 31 U.S.C. § 3730(d)). The heightened pleading standard of "Rule 9(b) ensures that the relator's strong financial incentive to bring an FCA claim—the possibility of recovering between fifteen and thirty percent of a treble damages award—does not precipitate the filing of frivolous suits." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006).

Although neither the AKS nor the Stark Law provide private rights of action, *Ameritox, Ltd. v. Millennium Lab'ys, Inc*., 803 F.3d 518, 522 (11th Cir. 2015), claims submitted to Medicare in violation of the Stark Law or the AKS are considered to be false claims under the FCA. *See* 42 U.S.C. § 1320a-7b(g) ("[A] claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of ... [the FCA]."); *United States v. Halifax Hosp. Med. Ctr.*, 2013 WL 6017329, at *7 (M.D. Fla. Nov. 13, 2013) ("Falsely certifying

compliance with the Stark Law in connection with a claim submitted to a federally funded insurance program is actionable under [the FCA].").

### C.    The Stark Law

The Stark Law, 42 U.S.C. § 1395nn, "prohibits doctors from referring Medicare patients to a hospital if those doctors have *certain specified types of* 'financial relationships' with that hospital" and "prohibits that same hospital from presenting claims for payment to Medicare for any medical services it rendered to such referred patients." *Mastej*, 591 F.App'x. at 698 (emphasis added). That is, "[t]he Stark Law prohibits physicians from referring Medicare and Medicaid patients to an entity for 'designated health services' (also called ancillary services) if the physician has a *prohibited* financial relationship with the entity." *United States ex rel. Hockaday v. Athens Orthopedic Clinic, P.A.*, 2022 WL 2820103, at *10 (M.D. Ga. July 19, 2022) (quoting 42 U.S.C. § 1395nn(a)(1)) (emphasis added). "However, not every compensation arrangement constitutes a prohibited financial relationship under the Stark Law. There are several exceptions which, if met, prevent a compensation arrangement from violating the statute." *United States ex rel. Raven v. Georgia Cancer Specialists I, P.C.*, 2019 WL 13040801, at *6 (N.D. Ga. Mar. 28, 2019), *amended on reconsideration*, 2019 WL 13040903 (N.D. Ga. June 18, 2019).

The Stark Law is enforced through regulations promulgated by the Secretary of Health and Human Services, which describe exemptions to the statute. *See Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 937 (11th Cir. 2013). In pleading a violation of the Stark Law, "the factual allegations [must be] sufficiently particularized such that the court may plausibly infer that the defendant had an *improper* financial relationship with a medical entity." *United States ex rel.*

*Raven v. Georgia Cancer Specialists I, P.C.*, 2016 WL 11745590, at *10 (N.D. Ga. Apr. 1, 2016) (emphasis added).

### D.    The Anti-Kickback Statute

The AKS "makes it a felony to offer kickbacks or other payments in exchange for referring patients 'for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program.'" *McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005) (quoting 42 U.S.C. § 1320a–7(b)(2)(A)).

## II.    Analysis

Defendants Integrated Behavioral Health, Inc. and Dr. Malhotra filed a Motion for Summary Judgment. (Doc. # 189). The remaining Defendants[9] have moved to dismiss Relators' Second Amended Complaint for failure to state a claim. (Docs. # 139, 146, 150, 161). Although the grounds for Defendants' Motions differ somewhat, the two overarching reasons that Defendants press for dismissal of Relators' FCA claims are: (1) Relators Second Amended Complaint, which is their third attempt to plead their claims, remains a prohibited shotgun pleading, and (2) Relators have failed to satisfy Rule 9(b)'s heightened pleading requirements sufficient to state a claim under the FCA. Relators have substantively responded to the Motions to Dismiss, but assert that they need discovery to properly respond to the Motion for Summary Judgment filed by Behavioral Health, Inc. and Dr. Malhotra. (Doc. # 201).

The court addresses the Motions to Dismiss first, because if they are due to be granted, the court need not rule on the Motion for Summary Judgment.

---

[9] The following Defendants have been voluntarily dismissed by Relators: American Health Partners; Brookdale Senior Living Community, LLC; Harborchase of Birmingham, Inc.; Huntsville Health and Rehabilitation, LLC; Diversicare Leasing Corporation; and Hanceville Nursing & Rehab Center Inc. (Docs. # 127, 130, 176).

### A.  The Second Amended Complaint is Shotgun Pleading

The Eleventh Circuit has pointed to four types of shotgun pleadings:

> The [first and] most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The [second and] next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (internal footnotes and page numbers omitted).

Relators' Second Amended Complaint is an example of the first type of shotgun pleading. Counts I and II of the Second Amended Complaint "re-allege[] paragraphs 47-212 as if set forth fully herein." (Doc. # 126 at ¶¶ 213, 216). Counts III through VI "re-allege[] paragraphs 57-212 as if set forth fully herein." (Doc. # 126 at ¶¶ 219, 224, 226, 228). Paragraphs 1 through 41 do not allege any relevant facts. Thus realleging paragraphs 57-212 essentially re-alleges all previous factual allegations of the Second Amended Complaint. Moreover, as noted before, each of the Counts of the Second Amended Complaint is *utterly devoid* of *any* factual allegations. (Doc. # 126 at 74-86). That is, reading just the allegations made in each count does not reveal any alleged operative facts.

13

For example, Count I begins with realleging paragraphs 47-212. (Doc. # 126 at ¶ 213).

Thereafter, the entire "substance" of Count I reads as follows:

> Defendants Dr. Malhotra, IBH, and Unity have knowingly presented or caused to
> be presented, a false or fraudulent claim for payment or approval, in the form of
> billings to Medicare/Medicaid. The claims were false and fraudulent because the
> patients for whom the claim were made were referred by Defendants Dr. Malhotra
> and IBH to an entity for which Defendant Dr. Malhotra maintained a prohibited
> financial relationship (e.g., Defendant Unity) in violation of the Stark Law.

(*Id*. at ¶ 214). Relators then allege that the Government was damaged, and set forth a prayer for

relief. (*Id*. at ¶¶ 214-15).

Similarly, Count II begins with realleging paragraphs 47-212. (*Id*. at ¶ 216). The entire

"substance" of the balance of Count II reads:

> Defendants Dr. Malhotra, IBH, and Unity have knowingly presented or caused to
> be presented, a false or fraudulent claim for payment or approval, in the form of
> billings to Medicare/Medicaid. The claims were false and fraudulent because the
> patients for whom the billings were made were obtained through unlawful kickback
> in violation of the Anti-Kickback Statute.

(*Id*. at ¶ 217). Relators then allege that the Government was damaged, and set forth a prayer for

relief. (*Id*. at ¶ 218). The other counts of the Second Amended Complaint are similarly devoid of

substance. (*Id.* at ¶¶ 219-234).

The problem with a complaint like this is that it forces the court and defendants to guess

what conduct the counts are referring to because the answer is always "everything that the plaintiff

has previously mentioned anywhere in the complaint." *United States ex rel. Wallace v. Exactech,

Inc.*, 2020 WL 4500493, at *8 (N.D. Ala. Aug. 5, 2020) (quoting *Estate of Bass v. Regions Bank,

Inc.*, 947 F.3d 1352, 1356 n.5 (11th Cir. 2020)). The Eleventh Circuit has specifically "condemned

the incorporation of preceding paragraphs where a complaint contains several counts, each one

incorporating by reference the allegations of its predecessors[]." *Weiland*, 792 F.3d at 1324

(quoting *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002)) (internal quotation marks omitted; alteration and emphasis in original).

> To be sure, this flaw is fatal:

> When faced with a shotgun pleading, a district court must *sua sponte* give the plaintiff at least one chance to replead a more definite statement of her claims before dismissing her case with prejudice. *Vibe Micro* [*v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018)]. When the amended complaint still fails to cure the deficiency, it may be subject to dismissal. *See Weiland*, 792 F.3d at 1320 (recognizing that a district court has the "inherent authority to control its docket and ensure the prompt resolution of lawsuits," which includes the ability to dismiss with prejudice a complaint that is a shotgun pleading); *see also Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018) (Implicit in a district court's order to replead is the "notion that if the plaintiff fails to comply with the court's order -- by filing a repleader with the same deficiency -- the court should strike his pleading or, depending on the circumstances, dismiss his case and consider the imposition of monetary sanctions" (quotations omitted)); *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (A district court is not required to permit amendment if, inter alia, "there has been ... repeated failure [] to cure deficiencies by amendments previously allowed").

*Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662–63 (11th Cir. 2019). Because the third version of Relators' complaint remains a prime example of the first type of shotgun pleading, the claims asserted therein are due to be dismissed on this basis alone.

## B.      The Second Amended Complaint Does Not Satisfy Rule 9(b)

Even if Relators Second Amended Complaint was not a prohibited shotgun pleading, it is due to be dismissed for an additional and alternative reason: it fails to adequately plead FCA violations. Similar to the shotgun pleading issue, the court also warned Relators that, in amending their complaint for a second time, they "would be wise to address the concerns in Defendants' Motions to Dismiss and Replies." (Doc. # 118). However, Relators did not heed the court's advice.

### 1.      Relators Have Not Adequately Alleged Violations of the Stark Law

Counts I, V, and VI allege violations of the FCA based on an alleged underlying Stark law violation. As discussed previously, "the Stark statute prohibits doctors from referring Medicare patients to a hospital if those doctors have certain specified types of 'financial relationships' with that hospital. [] And, in turn, the Stark statute prohibits that same hospital from presenting claims for payment to Medicare for any medical services it rendered to such patients." *Mastej*, 591 F. App'x at 698.

The Stark Law does not prohibit referrals from physicians whose compensation "is (1) equal to the 'fair market value for services and items actually provided'; (2) 'not determined in any manner that takes into account the volume or value of referrals or other business generated by the referring physician' for the hospital; and (3) 'commercially reasonable.'" *United States ex rel. Drakeford v. Tuomey Healthcare Sys., Inc.*, 675 F.3d 394, 398 (4th Cir. 2012) (footnote omitted) (quoting 42 C.F.R. § 411.357(p)). Defendants argue that Relators have failed to sufficiently allege that Dr. Malhotra's alleged illegal financial relationship violated the Stark Law's prohibition on improper financial relationships.

"While the Eleventh Circuit has not spoken directly on this point, a growing contingent of district courts have found that, in order to allege a departure from fair market value, and thus a violation of the Stark Statute, 'Relator[s] must allege a benchmark of fair market value against which Defendants' [compensation arrangements with] physician[s] can be tested.'" *U.S. ex rel. Schaengold v. Mem'l Health, Inc.*, 2014 WL 7272598, at *11 (S.D. Ga. Dec. 18, 2014) (citing *United States ex rel. Osheroff v. Tenet Healthcare Corp.*, 2012 WL 2871264, at *7 (S.D. Fla. July 12, 2012); *United States ex rel. Dennis v. Health Mgmt. Assocs., Inc.*, 2013 WL 146048, at *13

(M.D. Tenn. Jan.14, 2013); *United States ex rel. Schubert v. All Children's Health Sys., Inc.*, 2013 WL 6054803, at *11 (M.D. Fla. Nov.15, 2013)). The court finds these decisions well-reasoned and convincing.

Relators' allegations about the nature of the Stark Law violations assert that Dr. Malhotra and Defendant Unity had a "financial relationship in violation of the Stark Law" (Doc. # 126 at ¶ 49), and that "in addition to practicing Psychiatry at IBH, Dr. Malhotra has medical privileges and is a medical practitioner at [various facilities including Defendant] Unity." (*Id.* at ¶ 53). Relators' Second Amended Complaint provides no more or additional factual detail. These allegations are wholly conclusory. Relators have not alleged any benchmark of fair market value. Indeed, there are no allegations at all about fair market value or the terms of this "financial relationship." They have not set forth any factual allegations from which the court can evaluate whether any "financial relationship" that exists is prohibited.

Because Relators have not adequately alleged a Stark Law violation, their FCA claims in Count I, V, and VI are due to be dismissed for this additional reason.

### 2.     Relators Have Adequately Alleged a Violation of the Anti-Kickback Act

Counts II, IV, and VI of the Second Amended Complaint allege violations of the FCA based on an alleged underlying violation of the AKS. The AKS prohibits knowing and willful offers or payments of "any remuneration ... directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person ... to refer an individual to a person for furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a–7b(b)(2)(A).

The Eleventh Circuit has concluded that a violation of the AKS "occurs when the defendant (1) knowingly and willfully, (2) pays money, directly or indirectly, to doctors, (3) to induce the doctors to refer individuals to the defendants for the furnishing of medical services, (4) paid for by Medicare." *Mastej*, 591 F. App'x at 698 (citing *United States v. Vernon*, 723 F.3d 1234, 1252 (11th Cir. 2013). Relators allege that "[t]he FCA claims in this case are based on [] claims for payment made by [] Dr. Malhotra and [] Unity to Medicare/Medicaid [that were] rendered false because the patients for which the claims were made were obtained through illegal kickbacks paid in the form of free nursing services." (Doc. # 126 at ¶ 48). More specifically, Relators allege that Defendant "IBH employs nearly thirty nurses and nurse practitioners. IBH staffs its nurses and nurse practitioners with the" Facility Defendants. (*Id*. at ¶ 58). Relators further allege that "[i]n exchange for free nursing services performed in their facilities and for their benefit, the [Facility Defendants allowed [] Dr. Malhotra and IBH to refer [their] patients to medical facilities in which [] Malhotra has a financial relationship including [] Unity." (*Id*. at ¶ 59). "The referrals were induced by unlawful kickbacks in the form of free nursing services[]." (*Id*. at ¶ 60). Relators have alleged that approximately sixty-eight patients were referred from the Facility Defendants to medical facilities in which [] Malhotra has a financial relationship. (Doc. # 126-2). Relators assert that Defendants' actions violated the FCA and the AKS because each claim for treating these referred patients was "tainted" by the free nursing service kickback scheme, rendering them false and ineligible for payment.

Relators have sufficiently alleged that Defendants knowingly and willfully provided free nursing services to the Facility Defendants to induce referrals to Dr. Malhotra and Unity for the furnishing of psychiatric or psychological medical services paid for by Medicare. These allegations

state a claim for an AKS violation. *See Mastej*, 591 F. App'x at 698. However, because there is no private right of action under the AKS, *Ameritox*, 803 F.3d at 522, the court is left to evaluate whether these allegations are sufficient to state a claim under the FCA.

### 3. Relators Have Not Adequately Alleged Defendants Submitted Claims in Violation of the FCA

All Counts in the Second Amended Complaint -- including Count III, which is based on neither the Stark Law nor the AKS -- assert violations of the FCA. However, to state an FCA claim, the submission of a false claim must be alleged with particularity. *Corsello*, 428 F.3d at 1013. Because an FCA violation requires the submission of a claim to the federal Government for payment, plaintiffs bringing an FCA claim must plausibly allege that defendants presented "*an actual false claim* for payment … to the Government" because the '[FCA] does not create liability merely for a health care provider's disregard' for federal law." *Atkins*, 470 F.3d at 1357 (quoting *Clausen*, 290 F.3d at 1311) (emphasis in original) (internal citation and quotation marks omitted); *Carrel*, 898 F.3d at 1275.

In the Eleventh Circuit, a complaint alleging an FCA violation does not satisfy Rule 9(b)'s pleading-with-specificity requirement if it merely alleges that claims were submitted as a natural consequence of an underlying scheme. That is, the submission of a fraudulent claim "[cannot be] inferred from the circumstances." *Corsello*, 428 F.3d at 1013 (rejecting plaintiff's "argu[ment] that a pattern of improper practices of the defendants leads to the inference that fraudulent claims were submitted to the [G]overnment"). Stated differently, it "is not enough that a relator 'merely ... describe[s] a private scheme in detail [and] then ... allege[s] simply and without any stated reason ... his belief that claims requesting illegal payments must have been submitted, were likely submitted[,] or should have been submitted.'" *Carrel*, 898 F.3d at 1275 (quoting *Clausen*, 290

F.3d at 1311 (alteration in original)). A plaintiff is required to separately allege the who, what, when, where, and how of Defendants' submitted claims. *United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 797 (11th Cir. 2014) ("Whether submission of the *claim* is sufficiently established is a different question than whether the *scheme* has been sufficiently pleaded.") (emphasis added); *see also United States ex rel. Carver v. Physicians' Pain Specialists of Alabama, P.C.*, 2017 WL 4873710, at *2 (S.D. Ala. Oct. 27, 2017). Ultimately, the inquiry boils down to whether the "complaint includes 'some indicia of reliability' to support the allegation that an actual false claim was submitted." *HPC Healthcare*, 723 F. App'x at 789 (citing *Clausen*, 290 F.3d at 1311).

Generally, there are two methods relators use to plead sufficient facts to show an indicia of reliability under Rule 9(b). For ease of reference, this court has previously referred to these pleading methods as "buckets." *United States ex rel. Musachia v. Pernix Therapeutics, LLC*, 2021 WL 2826429 (N.D. Ala. July 7, 2021).

The first bucket includes allegations of "specific billing information—such as dates, times, and amounts of actual false claims or copies of bills" that were submitted to the Government. *Id*. (internal citations omitted); *Carrel*, 898 F.3d at 1277. The second bucket involves a relator setting forth factual allegations showing, with some indicia of reliability, that false claims have been submitted. A prime example of this type of allegation is when there is a plausible allegation based upon direct knowledge. Courts "are more tolerant toward [those types of] complaints ... [that] allege[ ] personal knowledge or participation in the fraudulent conduct." *Carrel*, 898 F.3d at 1276 (quoting *Matheny*, 671 F.3d at 1230 (11th Cir. 2012)). However, at a minimum, there must be an explanation as to the basis for asserting that fraudulent claims were submitted that is based on

personal knowledge. *Mastej*, 591 F. App'x at 704 ("It is not enough for the [plaintiff] to state baldly that he was aware of the defendant's billing practices, to base his knowledge on rumors, or to offer only conjecture about the sources of his knowledge.") (internal citations omitted)). Having explained the two buckets, the court addresses each one below.

> a.    **Relators Have Not Satisfied the First Bucket of Indicia of Reliability**

In an attempt to satisfy the first bucket of indicia of reliability, in *Carrel*, the plaintiffs submitted a spreadsheet with their complaint to support the proposition that defendant offered kickbacks to federally insured patients who used defendant's HIV/AIDS treatments and submitted those treatments to the Government for payment. *Carrel*, 898 F.3d at 1269, 1278. The relators argued that their spreadsheet containing patient names, the dates services were rendered, patients' insurance providers, and other information plausibly showed (along with other allegations) that the defendant submitted those services to the Government for payment. *Id*. at 1278. The court rejected the argument that the information in the spreadsheet, which established the "*possible* sources of funding," was sufficient to allege that claims were "*actually*" submitted to the Government. *Id*. (emphasis in original). A relator must allege more detailed information to establish an indicia of reliability. *Clausen*, 290 F.3d at 1312 ("No policies about billing or even second-hand information about billing practices were described."); *Keeler*, 568 F. App'x at 797 (11th Cir. 2014) (internal citations omitted) ("[F]or at least some of the claims, a relator must provide the following: 'details concerning the dates of the claims, the content of the forms or bills submitted, their identification numbers, the amount of money charged to the [G]overnment, the particular goods or services for which the [G]overnment was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of

claims based on those practices.'"); *Matheny*, 671 F.3d at 1226 (holding that plaintiffs satisfied Rule 9(b) with specific accounts, amounts billed, and itemized charges to the Government).

Relators have presented allegations about patient names or initials, approximate dates of treatment, and approximate dates that claims were submitted; however, they have not even attempted to allege times of treatment or specifics as to when the claims were submitted. Each of the allegations regarding dates for treatment or claims  allege "on or about" the specified date. Nor have Relators provided account numbers, information related to the specific services for which claims were made, or the dollar amounts of the alleged false claims.

A close examination of the allegations in the operative pleading also reveals some interesting trends regarding the approximate dates. The first four patients referenced were all allegedly "referred and admitted" on January 1, 2017. (Doc. # 126 at ¶¶ 62, 64, 67, 72, 75). And, the alleged false claims for each of these four patients were all submitted "on or about" January 16, 2017. (Doc. # 126 at ¶¶ 63, 65, 68, 73, 76). Interestingly, though, there was a second referral and admission for patient B.H. "on or about" April 3, 2017. (Doc. # 126 at ¶ 69). However, Relators repeat their allegation that the claim for this referral was submitted "on or about" January 16, 2017. (Doc. # 126 at ¶ 70).

The next six patients identified were all allegedly "referred and admitted" "on or about" February 1, 2017. (Doc. # 126 at ¶¶ 78, 80, 81, 83, 86, 88). And, the alleged false claims for each of these six patients were all submitted "on or about" February 15, 2017. (Doc. # 126 at ¶¶ 79, 82, 84, 87, 89).

Patient A.L. is alleged to have been "referred and admitted" "on or about" March 1, 2017, but Relators allege that the CMS Form 1500 for services for A.L. was submitted prior to that date, on February 21, 2017. (Doc. # 126 at ¶¶ 93, 94).

The next two patients were alleged to have been "referred and admitted" "on or about" March 15, 2017 and their CMS Form 1500s submitted "on or about" fourteen days later on March 29, 2017. (Doc. # 126 at ¶¶ 104-107).  The next two patients were alleged to have been "referred and admitted" "on or about" March 17, 2017 and their CMS Form 1500s submitted "on or about" fourteen days later on March 31, 2017. (Doc. # 126 at ¶¶ 109-113). Two more patients were alleged to have been "referred and admitted" "on or about" April 7, 2017 and their CMS Form 1500s submitted "on or about" fourteen days later on April 21, 2017. (Doc. # 126 at ¶¶ 129-132). Relators allege that for the vast majority of the patients allegedly "referred and admitted," the CMS Form 1500s for their treatment were submitted "on or about" fourteen days later. (Doc. # 126 at ¶¶ 134, 136, 140, 142, 144, 146, 148, 150, 152, 154, 156, 158, 160, 162, 166, 172, 174, 177, 179, 182, 186, 188, 192, 194, 208, 210, 212).

Patient D.L. is alleged to have been "referred and admitted" "on or about" August 1, 2018, but Relators allege that the CMS Form 1500 for services for D.L. was submitted prior to that date, on May 30, 2017. (Doc. # 126 at ¶¶ 93, 94).

The court's exhaustive examination of Relators' Second Amended Complaint reveals that they have failed to plausibly allege the first bucket of indicia that a complaint can utilize to satisfy Rule 9(b). Without any specific details of the allegedly submitted claims, the court will not "infer from [all of these] circumstances" that the claims "must have been submitted, were likely

submitted[,] or should have been submitted." *Carrel*, 898 F.3d at 1276 (quoting *Clausen*, 290 F.3d at 1311) (alteration in original); *see Helmly*, 2021 WL 1609823, at *3.

> **b.     Relators Have Not Satisfied the Second Bucket of Indicia of Reliability**

Turning to the second bucket of allegations that a relator may use to establish some indicia of reliability, at a minimum, the relator must explain the basis for asserting that fraudulent claims were submitted, and that explanation must be based on personal knowledge. *Mastej*, 591 F. App'x at 704 ("It is not enough for the [plaintiff] to state baldly that he was aware of the defendant's billing practices, to base his knowledge on rumors, or to offer only conjecture about the sources of his knowledge.") (internal citations omitted)). Several cases in the Eleventh Circuit have evaluated the circumstances that are necessary to satisfy this standard of "direct, first-hand knowledge." On the one hand, in *Hill v. Morehouse Medical Associates, Inc.*, an employee who worked for seven months in the billing department of the defendant, where the alleged fraudulent submissions were generated, had sufficient knowledge about the fraudulent scheme to satisfy the heightened standard. 2003 WL 22019936, at *4-5 (11th Cir. Aug. 15, 2003); *see, e.g.*, *Walker v. R & F Properties of Lake County, Inc.*, 433 F.3d 1349, 1360 (11th Cir. 2005) (concluding that direct first-hand knowledge was satisfied by nurse practitioner who worked for defendant and had explicit conversations about billing practices with office manager). On the other hand, without specific knowledge about billing practices -- *i.e.*, that the person was directly involved with submitting claims to the Government -- a plaintiff lacks an indicia of reliability. *See, e.g.*, *Corsello*, 428 F.3d at 1013-14 (concluding that direct first-hand knowledge was not satisfied by sales employee who was "aware" of fraudulent billing practices "based on information and belief"); *Helmly*, 2021 WL 1609823, at *3 (holding that relator who attended monthly financial meetings

24

and had "access to [defendant's] billing systems" to confirm that false claims were submitted has insufficient indicia of reliability to satisfy the Rule 9(b) standard).

Here, Relator Gaither worked with Defendant Unity as a licensed practical nurse. (Doc. # 126 at ¶ 54). Relator Cook worked with Defendant American Health Partners, Inc. as a registered nurse. (Doc. # 126 at ¶ 55). Cook also worked with Defendant Unity. (*Id.*). However, neither Relator alleges any personal knowledge regarding Defendants' billing practices or that they were involved or personally aware of the submission of the allegedly fraudulent bills at issue. Moreover, "even if the relator is an insider who alleges awareness of general billing practices, an accusation of '[u]nderlying improper practices alone [is] insufficient ... absent allegations that a *specific fraudulent claim was in fact submitted to the government.*'" *Carrel*, 898 F.3d at 1275 (quoting *Corsello*, 428 F.3d at 1013) (emphasis in original). Here, as in *Carrel*, "[a]lthough the relators allege a mosaic of circumstances that are perhaps consistent with their accusations that [Defendants] made false claims[,] the relators fail to allege with particularity that these background factors ever converged and produced an actual false claim where the [Defendants] both violated the Anti-Kickback Statute when [they] unlawfully [referred] a patient and then billed the government for the services provided to that patient." *Carrel*, 898 F.3d at 1275.

The allegations of the Second Amended Complaint simply do not contain any indicia of reliability supporting Relators' assertion that a false claim was actually submitted to the Government. Because Relators have not adequately alleged some indicia of reliability to support that allegation, all the FCA claims in the Second Amended Complaint are due to be dismissed for this additional or alternative reason.

### 4.    Relators' Conspiracy Claims Necessarily Fail

Counts IV and V of the Second Amended Complaint alleged violations of Section 3729(a)(1)(C) of the FCA which prohibits a conspiracy "to commit a violation" of the other subparagraphs constituting a claim under the FCA. "Numerous courts have found that an underlying violation of the other subparagraphs constituting a claim under the FCA is required to state a claim for conspiracy to commit a violation of the FCA." *United States ex rel. Lesnik v. Eisenmann SE*, 2021 WL 4243399, at *10 (N.D. Cal. Sept. 17, 2021) (citing *Bishop v. Wells Fargo & Co*., 823 F.3d 35, 50 (2d Cir. 2016) ("[T]he relators cannot show a conspiracy to commit fraud given that they have not sufficiently pleaded fraud under the FCA"), *vacated on other grounds by* 137 S. Ct. 1067; *United States ex rel. Petras v. Simparel, Inc*., 857 F.3d 497, 507 (3d Cir. 2017) ("[T]here can be no liability for conspiracy where there is no underlying violation of the FCA."). Thus, as Relators have failed to allege sufficient facts to support a viable FCA claim, their FCA conspiracy claim is due to be dismissed for this additional reason.

### III.    Conclusion

For all of the ink spilled in Relators' Second Amended Complaint, a close examination of the allegations reveals that there is actually little substance to them, and that they are mostly repetitive and conclusory. Very little, if any, factual detail regarding the alleged violations is provided. For these and all of the reasons discussed above, Defendants' Motions to Dismiss (Docs. # 139, 146, 150, 161) are due to be granted and Relators claims against all Defendants dismissed, which renders the Motion for Summary Judgment filed by Integrated Behavioral Health, Inc. and Dr. Malhotra (Doc. # 189) moot. The court will enter an Order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this March 23, 2023.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE